# CHARLESTON.

KENNEDY *et als.* v. OHIO FUEL OIL Co. *et als.*

Submitted September 23, 1919. Decided September 30, 1919.

1. MINES AND MINERALS—*Term "Land" Includes Any Interest Therein.*

   The term "land" includes any interest or estate therein, not a chattel interest. (p. 591).

2. PARTITION—*Presumption that Heirs Intended by Sale to Dispose of All Interest.*

   Where an ancestor dies intestate, seized of lands consisting of several distinct tracts and an interest in the minerals under still another tract, and some parts of the lands are partitioned in kind and other parts sold, as not partible, and the proceeds divided among the heirs pursuant to decrees in a partition suit, in the absence of any showing to the contrary, the presumption is conclusive that it was the intention of the heirs to dispose of all the lands, and interests therein, of which their ancestors died seized. (p. 591).

3. SAME—*Under Partition Sale General Description Covers Mineral Interests.*

   Where it appears that the ancestor owned a tract of 1000 acres and, in his lifetime, had granted certain portions thereof to others, reserving to himself one-half of the mineral in one

84 W. Va.

of such tracts, and thereafter joined his grantee in a deed conveying to a third person a large portion of such tract, thereby granting his mineral interest therein previously reserved, and died seized of his mineral interest in the remainder of such tract, and certain portions of his lands are partitioned in kind and other portions are sold in a partition proceeding and conveyed to the purchaser by a special commissioner appointed in such suit, under the general description, ''the residue'' of the 1000 acre tract, such general discription includes the mineral interest of the ancestor in the remainder of the tract. (p. 592).

4. DEEDS—*In Construing Deeds Grantor's Intent, if Ascertainable, Governs.*

In constiuing deeds as well as wills the grantor's intention is of paramount importance, and, if it can be ascertained from a consideration of the whole instrument, will be given effect, unless repugnant to some positive rule of law. (p. 592).

Appeal from Circuit Court, Kanawha County.

Suit in equity by John D. Kennedy and others against the Ohio Fuel Oil Company and others. Decree for plaintiffs, and for a discovery and accounting by defendant company, with reference to a commissioner for taking an account, and from a judgment on appeal, reversing the decree and remanding the cause, with directions to dismiss the bill, plaintiffs appeal. *Affirmed.*

*Surber & Edwards* and *Blue & McCabe,* for appellants.
*J. F. Brown* and *O. J. Wilkinson,* for appellees.

WILLIAMS, JUDGE:

Claiming to be the owners of one-twentieth of the oil in a tract of 51 acres of land situate on Blue Creek in Kanawha County, a part of which has been extracted by the defendant Ohio Fuel Oil Company, plaintiffs, some of whom are infants suing by next friend, brought this suit in equity, praying to have their interest declared and for a discovery of the amount of oil extracted, when and to whom sold, and for an accounting for the price received therefor. The Ohio Fuel Oil Company demurred to the bill and filed a special plea. Its demurrer being overruled, it appeared in open court by counsel and waived its right to file an answer and re-

lied on its special plea, to which plea the plaintiffs replied generally. The cause, being regularly matured as to all the defendants, was heard by the Court of Common Pleas of Kanawha County on the 30th day of April, 1918, on the bill, the amended and supplemental bill and exhibits therewith filed, taken for confessed as to all the adult defendants, except the Ohio Fuel Oil Company and the Eureka Pipe Line Company, upon admissions of plaintiffs made in court that the deeds from William L. Hindman, special commissioner, dated February 11, 1881, to Sophia Russell, and from said Sophia Russell and P. C. Russell to E. E. Edgell, dated February 23, 1914, and a deed of lease from said Edgell to the Ohio Fuel Oil Company, dated the 23rd of February 1914, as set forth in said defendant's special plea, were duly executed, delivered and recorded, but no admission that said deeds conveyed the title of plaintiffs' ancestors to the oil and gas or other minerals in said 51 acres of land in the bills mentioned, and upon admissions by the said Ohio Fuel Oil Company that the attested copy of the transcript of so much of the record of the partition proceedings in the suit of Jesse James against David M. Kennedy and others as appears of record and on file in the office of the clerk of the circuit court of Kanawha county, and exhibited with the plaintiffs' amended bill, is a true copy thereof; thereupon, the common pleas court decreed that plaintiffs are the owners of a one-twentieth undivided interest in the oil and gas and all other minerals in the aforesaid 51 acres of land, and decreed that said Ohio Fuel Oil Company make discovery of and account to plaintiffs for their share of the oil theretofore extracted, and referred the cause to a commissioner for taking such account.

Upon appeal to the circuit court of said county, the decree was reversed and annulled on the 18th of January, 1919, and the cause remanded with directions to the court of common pleas to dismiss plaintiff's bill, and from the last named decree plaintiffs have appealed to this court.

There is no disputed fact, and the sole question is one of law presented by the Ohio Fuel Oil Company's special plea, setting up the deed from William L. Hindman, special com-

missioner, to Sophia Russell, made pursuant to decrees rendered in the aforementioned partition proceedings, conveying to said grantee "the residue of a tract of land" situated on the waters of Blue Creek, and described in said deed as having been conveyed to Samuel James, Sr., deceased, by Dryden Donnally and wife and Charles Cavender and wife by deed dated on the............day of September, 1848, and recorded in the county court clerk's office of Kanawha county in Deed Book Q. at page 542, and further described as being the land "of which said Samuel James died seized." The defendant claims that that deed divested Nancy Kennedy, who was a daughter and one of the heirs of said Samuel James, Sr., deceased, and a party to the partition proceedings, of her title to the oil and other minerals in said 51 acres. This is denied by plaintiff. Thus is presented the only issue, the determination of which depends upon the proper construction of the aforesaid deed from Hindman, special commissioner. It is admitted that Samuel James, Sr., died seized of one-half of the interest in the oil and other minerals in the aforesaid tract of 51 acres, and it appears from the bill and exhibits therewith filed that his interest derived by deed from Donnally and Cavender, made in 1848, conveying to him a tract of about 1000 acres situate on Blue Creek in Kanawha county, now West Virginia. In 1867 said Samuel James, Sr., granted to Henry James and Samuel James, Jr., 397 acres, a portion of said tract, reserving therein one-half of all the minerals. A copy of that deed exhibited with the bill shows that the 397 acres was actually surveyed and its metes and bounds are given. Henry and Samuel James, Jr., then, about the year 1874, conveyed to Frederick Pool 346 acres out of the 397 acre tract. In this deed, Samuel James, Sr., joined, thereby conveying his one-half interest in the minerals previously reserved. Henry and Samuel James, Jr., thereafter, about 1875, conveyed to Jacob Meace the 51 acres remaining of the 397 acre tract. In this last mentioned deed Samuel James, Sr., did not join, and thereafter died intestate, seized of the one-half interest in all the minerals in said 51 acre tract, leaving as his heirs at law his children, Jesse James, Mary (James) Snyder, Sophia (James) Russell, Nancy (James) Kennedy, and one

grand child, Hattie (James) Rucker, the only child and heir at law of Strauder James, a deceased son of Samuel James, Sr.

Nancy (James) Kennedy died testate in the year 1891, leaving a will which was probated in the county court of Kanawha county October 21, 1891, whereby she devised and bequeathed all her property, real and personal, to her husband David M. Kennedy and Chloe M. Snyder jointly. The said David M. Kennedy thereafter intermarried with one of the plaintiffs, Barbara Kennedy, and died intestate, leaving John D. Kennedy, David B. Kennedy, Gordon G. Kennedy, and Mattie M. Kennedy, the last three of whom are infants and sue by their next friend, the said John D. Kennedy, children of himself and his second wife, Barbara Kennedy, as his only heirs at law. Barbara Kennedy joins in the suit in her own right as widow of David M. Kennedy and also as guardian for her aforesaid infant children.

The bill avers that on the death of Samuel James, Sr., his daughter Nancy Kennedy inherited a one-fifth interest in the one-half of the mineral in said 51 acres, of which Samuel James, Sr., died seized; that one-half of said one-fifth passed by Nancy Kennedy's will to her husband, and that his children inherited of him said interest, which was one-twentieth of the whole, subject to their mother's dower therein.

But it appears from a copy of the record exhibited with the plaintiffs' amended and supplemental bill that in December, 1877, a partition suit was brought by Jesse James against David M. Kennedy, Nancy Kennedy, his wife, and the other heirs of said Samuel James, Sr., to partition the lands of which their ancestor died seized; that in said proceeding the lands were partitioned in kind, except the lands described in said proceedings as being on Blue Creek, which the commissioners who had been appointed to make partition thought it would be advantageous to all concerned to sell, and so recommended to the court. The plaintiff in his bill in that proceedings alleged that he did not believe the Blue Creek lands susceptible of partition and that it would be advantageous to the heirs to have it sold. In pursuance

of said averment in the bill and recommendation by the commissioners, the court did decree a sale of the "said Blue Creek lands," and appointed William L. Hindman a commissioner to make sale thereof. It appears from a decree entered in said cause on the 3rd of January, 1882, referring to the report of special commissioner Hindman, that in the meantime the adult heirs had sold their interests in the Blue Creek lands to their sister Sophia Russell, for the price of $30.00 each and she had paid the respective parties the purchase price; and that William Hays, guardian for the infant heir, Hattie James, had also received a like sum for the share of said infant. The decree finds that the several sums paid appeared from the affidavits filed to be the full value of the aforesaid land, and that the interests of all the parties were promoted thereby, confirmed the sale and appointed William Hindman a special commissioner with authority to execute and acknowledge for record a deed conveying to Sophia Russell all the title of the aforesaid infant heir in said lands, and unless the adults should, within thirty days from the adjournment of court, execute and acknowledge a like deed to her for their respective interests, said commissioner was directed to make a deed in their stead. He did make such deed dated February 11, 1881, which was recorded on the 11th day of February, 1882. (The date of the deed is evidently a mistake and should be February 11, 1882). The said special commissioner's deed recites the source of his authroity, and describes the land thereby conveyed as the "real estate situate in the County of Kanawha & State of West Virginia, on the waters of Blue Creek and Pinch Creek, said real estate being the land described in the plaintiff's bill as the residue of the tract of land conveyed to said Samuel James, deceased, by Dryden Donnally & Mary his wife & Charles Cavender & Elizabeth his wife by deed bearing date on the_____day of September in the year 1848, and recorded in Kanawha County Clerk's Office in Book Q page 542, of which said Samuel James died seized." Then follows the habendum clause, which shows that Nancy Kennedy was one of the parties whose interests were conveyed.

If that deed operated to convey her title to the mineral in the 51 acres, plaintiffs' suit must fail. The purpose of the partition suit was evidently to dispose of all the lands of which Samuel James, Sr., died seized, and it is admitted he died seized of a one-half interest in the minerals in the 51 acre tract. The terms "land," "real estate" and "real property" include all tenements, hereditaments and interests in land, except chattel interests. Clause 15, section 17, chapter 13, Code. Oil and other minerals in place, therefore, are included in the general term land. But it is contended that the description in the deed is too uncertain and indefinite and does not include the mineral in said 51 arces. We hardly think so, in view of the fact that it is a part of the 1000 acre tract, situate on Blue Creek, originally owned in its entirety by Samuel James, Sr. Whether the mineral in the small tract is all the residue of the Blue Creek lands "of which said Samuel James, Sr. died seized," is not material. The commissioner's deed further describes the land as the land mentioned in the plaintiff's bill in that suit. But the bill does not specifically mention the mineral interest in the 51 acres, and describes the land asked to be sold as "a tract containing about three hundred acres lying on Blue Creek in said county, conveyed to him," (Samuel James), "by Dryden Donnally & Mary his wife, & Charles Cavender & Elizabeth his wife" mentioning also the date of the deed and the book and page where recorded, thus clearly indicating that the 300 acres is a part of the 1000 acre tract. It does not appear that said Samuel James died seized of any lands on Blue Creek other than what remained of the Donnally and Cavender tract. The commissioners to make partition recommended a sale of "the lands on Blue Creek," and the court decreed a sale of "said Blue Creek lands". The commissioners' report in that case does not appear, but a decree entered on March 21, 1881, recites that their report had been filed, and that it appeared therefrom that they were unable to ascertain "the exact locality of the said lands lying on Blue Creek". By that decree the court appointed commissioners to ascertain by actual survey the exact location and boundary lines of said lands. But it does not appear that this decree was

84 W. Va.

ever executed. The fact that Nancy Kennedy and other adult heirs of Samuel James sold their interests in the Blue Creek land, apparently without knowing its exact location or boundary lines, aids the presumption that it was their intention to dispose of their interests in such land, whether it consisted of one or more tracts; or, if more than one tract, regardless of whether or not they were contiguous.

The general description in the commissioner's deed of the land conveyed, as "the residue" of the 1000 acre tract on Blue Creek, and as the land "of which said Samuel James died seized," includes and passed to the grantee the estate of inheritance, owned by him at the time of his death, in any and all parts of the 1000 acre tract. The case presented is not one of repugnant descriptions in the deed itself. The question is, whether or not the general description in the commissioner's deed and the proceedings by which it was authorized to be made, includes the mineral interest in the 51 acre tract. As we view the case, there is no ambiguity in the description. The rule in construing deeds as well as wills is, that the intention of the grantor or donor is of paramount importance, and when his intention clearly appears from the written instrument viewed as a whole it must prevail. *Uhl* v. *Railroad Co.*, 51 W. Va. 106. It can not be presumed that the heirs of Samuel James, Sr., meant to dispose of a part only of the lands of which he died seized, in fact, a contrary presumption prevails in the absence of any showing that such was not their intention. Nothing appears here to indicate that such was not their intention, and the presumption that it was their purpose to dispose of all of the land is made conclusive by the fact that the bill asked for a sale and division of the proceeds of lands that could not be partitioned in kind, and the bill was taken for confessed as to the adult heirs.

The general description of the land conveyed by the special commissioner's deed embraced the interest owned by Samuel James, Sr., at his death, in the oil and other minerals in the 51 acres. *Herbert* v. *Wise*, 3 Call 239; *Adam* v. *Alkire*, 20 W. Va. 487; and *Collieries Co.* v. *Campbell*, 72 W. Va. 451.

We affirm the decree of the circuit court.    *Affirmed.*