### GARNSEY COAL CO. v. MUDD.

(District Court, N. D. Alabama, S. D.   May 8, 1922.)

1. **Property** ⟨⟩7—**"Lands" includes all interest above and below surface.**
    The term "lands" is not as broad as that of "property," but it includes all interest in the land, or that lies above or below it.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Land.]

2. **Constitutional law** ⟨⟩26—**Legislature has all powers, except as limited.**
    A state Legislature has all powers, except so far as limited by Bill of Rights and Constitution.

3. **Eminent domain** ⟨⟩61—**Right of way may be condemned through seam of coal under the surface.**
    Under Const. Ala. 1901, § 23, prohibiting the taking of private property for private use, but empowering the Legislature by law to secure to persons or corporations the right of way "over" the "lands" of other persons, the Legislature had the power to authorize condemnation of rights of way through a seam of coal in the bowels of the earth.

In Equity. Petition by the Garnsey Coal Company to condemn rights of way through a seam of coal in the land of John H. Mudd. On motion to dismiss proceedings. Decree entered overruling motion.

Tillman, Bradley & Morrow, of Birmingham, Ala., for petitioner.
J. Reese Murray, of Birmingham, Ala., for respondent.

ERVIN, District Judge. This is a petition to condemn certain rights of way through a seam of coal in the bowels of the earth, filed under certain statutory provisions in Alabama, and begun in the probate court, and removed to this court, and comes on to be heard on a motion to dismiss the proceedings, which motion is based upon the proposition that the provisions of the Code of Alabama and special act of the Legislature authorizing condemnation of rights of way underground are unconstitutional. The contention is based upon the language used in section 23 of the Constitution, where, after providing that the exercise of the right of eminent domain shall never be abridged, so as to prevent the Legislature from taking property and franchises

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of incorporated companies and subjecting them to public use, the following language is used:

"But private property shall not be taken for, or applied to, public use, unless just compensation be first made therefor; nor shall private property be taken for private use, nor for the use of corporations, other than municipal, without the consent of the owner: Provided, however, the Legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations."

It then forbids the construction of eminent domain so as to allow taxation or forced subscription for the use of individuals, associations, or corporations, other than municipal. Eliminating some unnecessary portions of these provisions, so as to present the question raised for decision and underscoring two of the terms used, we find the following:

"Nor shall private *property* be taken for private use: * * * Provided, however, the Legislature may by law secure * * * the right of way over *lands*."

[1] Of course, the two clauses are to be construed together to get at the intention, as expressed. Notice, first, that private *property* is is not to be taken, but a right of way may be condemned over *lands*. The term "lands" is not as broad as that of "property," but it includes all interest in the land or that lies above or below it.

[2] The Legislature has all powers, except so far as it may be limited by the Bill of Rights and the Constitution. The manifest intent of the two clauses, when read together, is that the Legislature is forbidden to authorize the condemnation of private property for private purposes, except for rights of way over land. Reading the whole section, to get the idea intended to be expressed, we find: First, a declaration that the property of corporations shall be subject to the same right of eminent domain as that of individuals, but in all cases just compensation must be made before its taking. Second, that private property shall not be taken for private or corporate use, without the owner's consent; then this provision is qualified by granting to the Legislature the power to grant rights of way over lands, when just compensation therefor is paid. Third, the right of eminent domain shall not be so construed as to allow taxation or forced subscription for the benefit of individuals, associations or corporations other than municipal.

[3] Remembering that this section is written to define the limitations intended to be put upon the power of the Legislature as to eminent domain, we are now prepared to discuss the meaning of the provisions found in the second heading. Was it intended to limit such rights of way the Legislature could grant to surface rights, or to give it the right to grant all necessary rights of way as to land? In the absence of limitation, the Legislature had unlimited power. Was it the intention to limit this power as to necessary rights of way under the surface, but to permit its exercise as to surface ways? Is there anything to show such a separation of the limitations imposed on the legislative powers? Is the word "over," as used, a word of limitation or of inclusion?

It is true that the ordinary meaning of the word "over," as applied to land, would be across or along the surface; but the word may have

other meanings. In one case it was used to indicate above the land. Ruckert v. Grand Ave. Ry. Co., 163 Mo. 260, 63 S. W. 814. One would readily say that the judge of this court has jurisdiction over so many counties. These counties are land, and the jurisdiction covers the space covered by this land. Surely it would not be contended that his jurisdiction was limited to the surface of the land of these counties, yet the contention might as readily be made as here.

The real meaning of the word as so used is one of inclusion, and not of limitation to the surface; it means over all the lands or space of so many counties. The same meaning it seems to me should be given the word "over" as used in the Constitution, viz. there is no denial of the right of the Legislature to pass laws to condemn rights of way "over land"; that is, covering lands, as to or concerning lands. As used here, "over lands" is to include the whole land and all its parts, whether over, on, or under the surface. Jurisdiction over land is allowed to the Legislature for the purpose of granting necessary rights of way to persons or corporations. The word "over" is not used in connection with any word indicating the surface of the land; if so used, it would undoubtedly have limited the rights of way to the surface.

Remembering, also, that the two provisions, the one forbidding the taking of private property and the proviso thereto authorizing the Legislature to provide for condemnation of rights of way over lands, when construed together, are not a grant of power, but are a limitation thereof; hence the power of the Legislature is limited only so far as the words expressly require. The Constitution was not differentiating between surface rights of way and ways under the surface. The words are "over lands," and not "over the surface of lands." It was denying to the Legislature the right to pass laws taking private property of one for another's use, except necessary rights of way in lands. It was dealing with general rights and powers granting and denying them, not splitting such rights and powers as granted, so as to give to some and deny to others.

As to land, it recognized that often one could not properly enjoy his own, and render its use valuable to him and to the public, unless he could make some use of the lands of his neighbor. The public, and the courts, are lately recognizing many interests or rights the public have in what formerly were considered mere private concerns. Is not the public as much concerned with the right of one who owns a seam of coal to get it to the market, as it is that one should get his bale of cotton or his bushel of corn to the market? The public is equally as much concerned with three great subjects, food, clothing, and fuel.

Is not it as much a concern of the public that a person should not, by buying lands over a seam of coal, so as to cut off other owners in that seam from getting the coal out for market, as it is that one should not buy or own surface lands surrounding others' holdings, and deny to them the right to cross with their produce, so as to market it, or to cross himself, so as to perform his other duties to the community. Is there a limitation of the character of the right of way to a way over the surface of land?

I do not think the intent was to use the word "over" as one of limitation of the character of the way to be granted. The intent was to qualify the preceding general provision, which denied the right to take private property, so far as to authorize the Legislature to provide by general laws for condemning rights of way where lands of one person were so situated as to interfere with the proper use of another's lands. See State v. County Commissioners, 83 Ala. 304, 3 South. 761.

Is the full development of the resources of a state to be limited to a surface development, when property of great value lying under the surface can be bottled up and destroyed, to the great damage, not only of the owner, but to the public, by unscrupulous persons, who might buy small lots in such localities so as to tie up whole fields of coal. I feel that the opinion in the state case gives a proper and just construction of the clause, and by necessary inference covers underground as well as surface rights of way. The one construction opens up the property in the state for proper use and development, while the other tends to tie up property and to stifle development.

A decree will be entered overruling the motion.