## HOLLOWAY'S UNKNOWN HEIRS et al. v. WHATLEY et al.

### No. 2992.

Court of Civil Appeals of Texas. Beaumont.

April 16, 1937.

Rehearing Denied April 21, 1937.

Llewellyn & Dougharty, of Liberty, for appellants.

P. C. Matthews, of Liberty, for appellees.

COMBS, Justice.

This suit involves title to a one-half undivided oil and mineral interest in 899 acres of land, a part of the Moses Donahoe league in Liberty county. The case was submitted on an agreed statement of facts; the sole question involved being a construction of a deed by F. H. Holloway, predecessor in title of the appellants, as grantor, to Jacob C. Baldwin, predecessor in title to the appellees, as grantee. The precise question is whether Holloway's conveyance of all of the *"land owned by me in Liberty county"* operated as a conveyance of said mineral interest which had been previously severed by reservation and was then owned by him.

The reservation of the mineral estate was contained in a deed from F. H. Holloway, as grantor, to Jacob C. Baldwin, as grantee, dated August 20, 1907, which reservation was as follows: "It is expressly understood that the vendor herein, F. H. Holloway, does reserve and except from this conveyance an undivided one-half interest in and to any and all mineral, oil and such like substances that may be now or hereafter found or discovered in on or under the lands hereby conveyed regardless of the wording of this deed hereinafter to follow." Then followed the description of the 899-acre tract in the Moses Donahoe League. It is agreed that such reservation reserved Holloway's title to said minerals and that he owned it at the time of the conveyance in question. By general warranty deed dated the 9th day of May, 1910, F. H. Holloway conveyed to Jacob Baldwin several tracts of land in Liberty county, the first tract being all that he owned on the Elizabeth Munson league, the second tract being 180 acres out of the B. B. B. & C. Ry. Company survey, and the following: "Third tract being 30 acres a part of the Moses Donahoe League, being all that part of said league the title to which now stands in my name. *If there is any other land owned by me in Liberty County, Texas, or any land, the title to which stands in my name, it is hereby conveyed, the intention of this instrument being to convey all land owned by me in said County.*" (Italics ours.)

The sole question then for our determination is, Did the term "land," as used by the grantors in said conveyance, include the previously severed oil and mineral estate so as to operate as a conveyance of it?

As in the case of other contracts in writing, the cardinal rule for the construction of deeds is that the intention of the parties should be discovered and given

effect. Pierson v. Sanger, 93 Tex. 160, 53 S.W. 1012; Cravens v. White, 73 Tex. 577, 11 S.W. 543, 15 Am.St.Rep. 803; Pugh v. Mays, 60 Tex. 191; Berry v. Wright, 14 Tex. 270; Vogel v. Allen, 118 Tex. 196, 13 S.W.(2d) 340; Couch v. Southern Methodist University (Tex.Com. App.) 10 S.W.(2d) 973. And where the true intent of the grantor as manifest from the instrument as a whole shows that words used were intended to be given a commonly accepted meaning rather than a technical or legal one, such clearly manifest intent will be given effect. Hopkins v. Hopkins, 103 Tex. 15, 122 S.W. 15; Simonton v. White, 93 Tex. 50, 53 S.W. 339, 77 Am.St.Rep. 824; Texas Company v. Meador (Tex.Com.App.) 250 S.W. 148. However, where the words used have a technical or legal meaning and there is nothing in the deed, when construed as a whole, to show that any other meaning was intended, they will be given their legal meaning. Singletary v. Hill, 43 Tex. 588; Bergfeld v. Buer (Tex.Civ.App.) 8 S.W. (2d) 776; Williamson v. Cowan (Tex.Civ. App.) 265 S.W. 745.

■ With the foregoing rules in mind, we will first seek to ascertain whether the term "land," in its legal sense, includes severed minerals. It is not questioned, of course, that oil, gas, and other minerals in place are realty in Texas. Our Supreme Court has many times so held. See Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Waggoner Estate v. Sigler Oil Co., 284 S.W. 921. Words and Phrases, Third Series, vol. 4, p. 736, gives the following definitions of the word "land":

"The word 'land' includes, not only the surface of the earth, but everything under or over it. Gas Products Co. v. Rankin, 63 Mont. 372, 207 P. 993, 997, 24 A.L.R. 294.

"The term 'lands' is not as broad as that of 'property,' but it includes all interest in the land, or that lies above or below it. Garnsey Coal Co. v. Mudd (D.C. Ala.) 281 F. 183, 184.

"The term 'land' includes any interest or estate therein, not a chattel interest. Kennedy v. Ohio Fuel Oil Co., 84 W.Va. 585, 101 S.E. 159, 161."

In Lewellyn v. Colonial Trust Co., 17 F. (2d) 36, the federal Circuit Court of Appeals held that a tax on an income of oil derived from Indian lands creates a burden on the Indian tribe "since oil in place

was land." And in Selvey v. Grafton Coal & Coke Co., 72 W.Va. 680, 79 S.E. 656, the Supreme Court of West Virginia held that coal under a tract of land might be recovered by plaintiff who, in his petition, alleged ownership of the land, in that proof of the ownership of the coal did not constitute a material variance from the averment of the pleading. The term "land," as used in taxing statutes, has been held synonymous with real estate. Woodyard v. Kuhn, 89 W.Va. 670, 110 S.E. 187. And in the case of Clay v. Bogie, 119 S.W. 737, the Court of Appeals of Kentucky held that the term "land" includes every form of real estate. In Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 69 L.R.A. 986, 8 Ann.Cas. 1117, our Supreme Court held that the surviving spouse was entitled to a one-third interest for life in the proceeds of the sale of oil produced from land which was the separate property of the deceased spouse, by virtue of the statute of descent and distribution of this state (now article 2571, Vernon's Ann.Civ.St.) which entitled her to an estate for life "in one-third of the land of the intestate."

■ Counsel for appellants readily concede in their brief that the term "land" as defined by the courts will, under some circumstances, include minerals in place, as, for example, (a) for purposes of taxation, (b) under the laws of descent and distribution (Vernon's Ann.Civ.St. art. 2570 et seq.), and (c) under the statute of frauds (Vernon's Ann.Civ.St. art. 3995 et seq.). But they insist that a general conveyance of "land" will not operate to convey a previously severed mineral estate in a particular tract within that area. The principal case cited as supporting the proposition is Kincaid v. McGowan, 88 Ky. 91, 4 S.W. 802, 804, 13 L.R.A. 289, by the Court of Appeals of Kentucky. It is true that the court there held that the deed under consideration did not operate to convey a mill site and certain mineral interests within the area described. But we think a close reading of the opinion and an analysis of the fact situation there involved will show that the court based the holding on the conclusion that the deed, when construed as a whole, negatived the construction that the grantor *intended* to convey the mineral estate. The court specifically stated that "minerals in place are land." And, although stating in effect that minerals constructively severed by conveyance or reservation "form a distinct

possession or inheritance," the court added: "In the latter situation [severed mineral estate] the mines will still, of course, *retain the qualities of real estate,* and will be transferred by conveyances applicable to the particular disposition of them *intended to be made.*" (Italics ours.) So, it is evident, we think, that the court did not intend to announce any general rule that a conveyance of "land" will not operate as a conveyance of minerals in place. In that case, as in every such case, the controlling consideration was the intent of the grantor.

It seems to us that under the authorities the term "land," in its legal sense, does include oil and minerals in place. Before severance of the mineral estate from the balance of the estate by conveyance, reservation, or exception, the term "land" certainly includes both. So, in a legal sense the mineral estate in place is just as truly "land" after it is so severed from the surface as the surface is "land" after it is severed from the minerals. In other words, it is our conclusion that oil and other minerals in place are in a legal sense "land," whether they have been constructively severed from the surface estate or not.

The question then is, Did Holloway, as grantor, use the term "land" in such sense as not to include the oil and mineral estate here involved? Since the legal sense of the term did include the mineral estate, that construction must be given to the term unless Holloway's intent to use it in a different and more restrictive sense is clearly manifest. We do not find such manifest intent in the instrument. The appellant insists that such intent is to be gathered from the fact that Holloway specifically conveyed 30 acres of land on the Moses Donahoe league, followed by the recital "being all that part of said league the title to which now stands in my name." The contention is that the recital that the 30 acres was "all the land" owned by him on the Donahoe league shows that the grantor did not consider the mineral interest which he owned on the Donahoe "land." There would be more force in the contention if Holloway had not introduced the general conveyance which immediately follows, and italicized by us above, with the recital: "If there is any other land owned by me in Liberty county, Texas, * * * it is hereby conveyed," etc. His use of the term "if" and the clause as a whole clearly indicates

that he was uncertain as to what land he owned in Liberty county, or what land stood in his name in that county. The intent he did manifest was that whatever land he owned in the county was conveyed and he did convey it by apt words of conveyance. Now if he was uncertain as to what land he owned in Liberty county, can it be said that he was not uncertain as to what land he owned in the Moses Donahoe league in Liberty county? We think not. Nor does the deed as a whole manifest an intent to give the term "land" other than its legal meaning. So it is our conclusion that the term so used by Holloway in his conveyance to Baldwin must be given its legal meaning and effect.

Against such conclusion, counsel for appellants, in their able brief, argue that: "The English language contains, and there may be easily employed in conveyances, such words as are required to particularly describe the estate or interest in land sought to be transferred, and we can conceive of no good reason why a grant should be by implication enlarged beyond what the particular verbiage therein contained fully and clearly warrants. As a matter of fact, to our way of thinking, it would be a dangerous precedent, one fraught with difficulties not now capable of conception, should the courts of this State go so far as to hold that such a blanket description as 'all land owned by grantor' should include a mineral estate previously reserved, set apart and made a definite and distinct estate separate and apart from the soil itself. As we view the matter, neither the exigencies of the law of conveyances, nor of the particular case at bar require any such ruling. In fact, in the many complexities in which the law of our State is beginning to find itself due to extensive trading in mineral properties, it appears to us that the law relating to conveyances of minerals should remain ever such as to require the contracting parties to make definite and certain the meaning of their conveyance by the use of proper language exactly and definitely describing the minerals or interest in minerals intended to be conveyed, and that in no instance and under no circumstances should such law be relaxed or extended to include within the purview of a deed, by construction, a grant of a mineral estate or interest unless clearly compelled by the language employed."

In the main, we heartily concur in the sentiment so well expressed. Cer-

tainly a grant should not be "enlarged beyond what the particular verbiage therein contained fully warrants," to which we will' only add that neither should a grant be restricted or reduced to less than the legal import of the words which the grantor used unless his intent to so restrict and limit his grant is manifest from a proper construction of his deed. If Holloway's heirs have suffered the loss of a mineral interest which they thought they owned, it results from the fact that their ancestor, in conveying all the land he had in Liberty county, just took in too much territory. And the result is one which neither a court nor able counsel, employed long after the event, can avert. In ascertaining the intent of the grantor of a deed, it is not the function of the court to attempt to ascertain and declare what he meant to say, but only the meaning of what he did say. And in doing that it is the duty of the court to presume that he knew the legal meaning of the terms which he employed in the deed. The application of that rule may sometimes appear to work a harsh result. But even so, it is a safer and wiser rule of decision which rests titles to property on the basis of the somewhat definite and ascertainable legal meaning of the words which the grantor used rather than upon the always uncertain and imponderable basis of what some court might decide that the grantor meant to say.

It is our conclusion that the trial court correctly construed the Holloway deed as conveying the mineral interest involved.

Judgment affirmed.