**Murphy ROGERS et al., Appellants,**

**v.**

**Wm. CARTER, Independent Executor of the Estate of Jim Rogers, Deceased, et al., Appellees.**

**No. 14293.**

Court of Civil Appeals of Texas.

San Antonio.

Dec. 9. 1964.

Rehearing Denied Jan. 6, 1965.

Kerr, Gayer, Ray & Lyons, San Angelo, for appellants.

Moursund & Ferguson, Johnson City, for appellees.

BARROW, Justice.

This case involves the construction of the last will and testament of Jim Rogers, who died on December 14, 1959, at the age of 93 years, leaving six children born during his first marriage, and Mrs. Belle Rogers, his second wife, who were legatees and devisees under his will.[1] It is not asserted that his will is ambiguous, but a controversy arose in that, subsequent to the execution of his will, testator disposed of his interest in four of six sections of land specifically devised to his children and acquired full ownership of the other two sections in which his children were devised specifically designated interests. The trial court withdrew the case from the jury and construed the will as devising the testator's children specific interests in the six sections of land, and that this specific bequest was adeemed in part by testator's disposition of his interest in four of these sections prior to his death.

Jim Rogers' first wife, Ida, died intestate in 1913, leaving as her sole heirs Jim and their six children, who are appellants in this appeal, and hereinafter referred to as "his children." Jim and Belle Rogers were married in 1920 and lived together until the death of Jim. They had no children, although Belle had a daughter by a prior marriage. Subsequent to the death of Jim, but prior to the filing of this suit, Belle died testate, leaving her daughter and son-in-law, Louise and Norton Matthews, as her independent executors and sole heirs.

The will of Jim Rogers was executed on November 26, 1949. At that time, Jim owned an undivided one-half interest in Surveys 10 and 12, and 440 acres of Survey 14 of T.W. N. G. Ry. Co. Surveys in Schleicher County, Texas. The other one-half interest was owned by his son, Melvin Rogers. Jim also

1. "I.
"I direct that all my just debts shall be paid.
"II.
"I give and bequeath to my children, Murphy Rogers, Myrtle Luckenbach, Mae O'Neill, Milda Findlay, Merlin Rogers and Melvin Rogers, in fee simple, share and share alike all of my undivided one-half interest in Survey No. 14, Abst. No. 1325; Sur. No. 12, Abst. No. 1327; Sur. No. 10, Abst. No. 1326; all T.W.N.G. Ry. Co. Surveys, located in Schleicher County, Texas; and my undivided one-third interest in Sur. No. 13, Abst. No. 645; Sur. No. 11 Abst. No. 644, and Sur. No. 9, Abst. 643, all T.W.N.G. Ry. Co. Surveys, located in Schleicher County, Texas.
"III.
"I give and bequeath to my wife, Belle Rogers, in fee simple, all the rest and residue of my property, real, personal and mixed, of which I may die, seized and possessed."

owned an undivided one-third interest in Surveys 9, 11 and 13 with two of his sons, Melvin and Merlin. All the even numbered surveys were purchased prior to the death of Jim's first wife, although the State School Fund was not paid in full until 1940. In 1941, Melvin acquired the undivided interests of his five brothers and sisters which they had inherited from their mother. In 1942, Jim and Belle Rogers conveyed their undivided one-half in 200 acres of Survey 14 to Melvin, and received a vendor's lien note in the amount of $5,500. In 1944, Melvin and his wife conveyed all interest in this 200 acres to Jim in cancellation of the vendor's lien note. However, in subsequent instruments, Jim treated this 200 acres the same as the other 440 acres of Survey 14. The odd numbered surveys were acquired in 1926 by Jim and his sons Melvin and Merlin jointly, while they were operating as partners in the livestock business.

Jim also owned a community interest with his wife, Belle, in a ranch in Menard County, which he deeded to Belle, subject to his life estate, at the time he executed his will.

After exchanges of property in 1950 and 1957, Jim did not own any interest in Surveys 9, 10, 12 and 14, but did own Surveys 11 and 13 in fee. His children assert that the after-acquired interests should pass to them under paragraph II of the will. Under the construction of the will by the trial court, the children were devised the undivided one-third interest in Surveys 11 and 13, and the remaining two-thirds interest in those surveys, which were acquired by Jim after his will was executed, passed to his surviving wife under the residuary clause of the will. All debts against Surveys 11 and 13 were ordered paid out of the residuary estate. In our opinion, this construction is correct.

■ The term "ademption" as involved herein is used to describe the act by which a specific legacy becomes inoperative because of the disappearance of its subject matter

from the testator's estate in his lifetime. The general rule is that a specific legacy is adeemed if the thing given is disposed of by the testator during his lifetime. 96 C.J.S. Wills §§ 1172, 1177; 57 Am.Jur., Wills, § 1582; Page on Wills, Chapter 54.5.

This rule is recognized in Texas. In Burch v. McMillin, Tex.Civ.App., 15 S.W.2d 86, no writ hist., Chief Justice Hickman, speaking for the Eastland Court, said: "An ademption would have resulted had the testator sold all of the land covered by this item, for it is well settled that the alienation by the testator of the subject of a specific legacy adeems the legacy. But it is also well settled that the doctrine of ademption by alienation operates pro tanto only, so that, where but part of the legacy has been alienated, the remainder passes to the legatees." See also, Willie v. Waggoner, Tex.Civ.App., 181 S.W.2d 319, writ ref.; Gallagher v. O'Brien, Tex.Civ.App., 158 S.W.2d 345, no writ hist.

■ Appellant children recognize this rule, but assert that it has no application here as the conveyances by testator were only a voluntary partition whereby testator's undivided interest in the land was exchanged for equivalent specific parcels of the same land in severalty. In this event the specific legacy would not have lapsed and therefore not be adeemed. Brady v. Paine, 391 Ill. 596, 63 N.E.2d 721, 162 A.L.R. 138.

In Brady v. Paine, supra, the will of Brady gave his daughter his undivided one-half interest in a described 80 acres. After the will was executed, testator and the owners of the other one-half interest exchanged quitclaim deeds, whereby Brady then owned in fee the south 40 acres and the other owners, the north 40 acres in fee. The court recognized the doctrine of ademption, but held that it was inapplicable to a voluntary partition between cotenants *since neither acquired any lands which he did not already own.* It was said of such a voluntary partition: "Thereafter he holds title, not under the deed of his cotenant, but under his original title. Applying that rule to this

case, the result is that by the voluntary partition the testator acquired nothing. Before the quitclaim deeds were made he owned an undivided one-half interest in the eighty-acre tract. After the partition he owned precisely the same quantity and estate. The only effect of the partition was to transfer his ownership from the undivided interest in the entire tract to ownership in severalty of the south half of the tract. He still owned the one-half interest in the eighty-acre tract which he already owned and which, by his will, he had devised to his daughter, Clare Lucille Paine."

█ It is seen that to avoid an ademption the voluntary partition must be such that the testator still owned the same quantity and estate. 162 A.L.R. 146; Weber v. Dickerson, Ky. Court of Appeals, 248 Ky. 522, 59 S.W.2d 14; Duffel v. Burton, 4 Del. 290. This cannot be said of the conveyances to and from Jim Rogers after the execution of his will. Weishuhn v. Matejowsky, Tex.Civ.App., 170 S.W.2d 567, wr. ref. w. o. m.

In 1926 Jim Rogers and his two sons purchased the odd numbered surveys, and jointly executed notes for $4,000, $4,000 and $6,000 as part of the purchase price, and secured same by a deed of trust on this land. One $4,000 note was paid and released in 1929, but the other two notes were extended from time to time until 1940, when the three joint owners obtained a loan from the Federal Land Bank in the amount of $10,500 in extension of these two unpaid notes. Jim Rogers made semi-annual payments upon this debt, but it was not discharged prior to his death. In 1942, Jim and Melvin Rogers borrowed $12,400 from the Federal Land Bank and gave a deed of trust on Surveys 10 and 12, and 440 acres of Survey 14, to secure this indebtedness.

On January 14, 1950, Jim and Melvin, joined by their respective wives, exchanged deeds. Jim and his wife conveyed their undivided one-half interest in Surveys 10, 12 and 14 to Melvin in consideration of Melvin and his wife conveying their one-third interest in Surveys 9, 11 and 13 to Jim, and the further consideration of Melvin assuming one-half of the indebtedness then owed the Federal Land Bank on Surveys 10, 12 and 14. (The 200 acres which belonged to Jim in fee were inadvertently omitted from the deed, but were conveyed by correction deeds executed by Jim and Belle Rogers in 1952 and 1953.) On the same date, Melvin and his wife conveyed to Jim their one-third interest in Surveys 9, 11 and 13, in consideration of the above conveyance by Jim and his wife, and the further assumption by Jim of one-third of the indebtedness owing the Federal Land Bank on these surveys.

On April 15, 1957, Jim Rogers, joined by his wife, conveyed to Merlin Rogers all of their undivided interest in Survey 9 in consideration of the conveyance by Merlin and his wife to Jim of their undivided one-third interest in Surveys 11 and 13, and the agreement of Jim to assume one-third of the indebtedness owed Federal Land Bank on this land. On the same date Merlin and his wife executed their deed on this undivided one-third interest to Jim.

We do not believe that the above transactions, extending over a seven-year period, can be construed as a voluntary partition among cotenants. It is readily seen that Jim Rogers owned less land after these conveyances than at the time his will was executed. In addition, there were other considerations moving between the parties, in that each assumed new obligations. Merlin Rogers had no part in the exchanges in 1950 between the two cotenants of the even numbered surveys, and Melvin had no part in the exchanges of 1957 between Merlin and Jim Rogers of interests in the odd-numbered surveys.

█ Appellants assert in the alternative that the devise to them was a demonstrative rather than a specific devise and therefore was not adeemed. It is clear that the doctrine of ademption applies only to specific legacies. 96 C.J.S. Wills, § 1173. It is our opinion, however, that the devise to tes-

tator's children must be construed as a specific devise.

The cardinal rule of construction of an unambiguous will is that the intention of the testator must be ascertained, if possible, at the time he executed the will, and the intention of the testator must be ascertained from the four corners of the will, giving meaning to all parts, if possible. Murphy v. Honeycutt, Tex.Civ.App., 199 S.W.2d 298, writ ref.; 44 Tex.Jur., Wills, §§ 134, 135. To ascertain if a devise is specific or demonstrative, we go to the terms and conditions of the will to ascertain the intention of the testator. Lake v. Copeland, 82 Tex. 464, 17 S.W. 786.

Testator's will bequeaths to his children definite interests in six designated surveys of land, and bequeaths all the remainder of his estate, both real and personal, to his widow. In Currie v. Scott, 144 Tex. 1, 187 S.W.2d 551 (1945), similar devises of undivided interests in particularly described land were found to be specific devises. It was said: "The testatrix undertook and intended by her will to invest the four petitioners with the ownership of definite and distinct undivided interests in the one-half interest owned by her in the oil, gas and other minerals in five sections and fractional sections of land in Glasscock County. These devises are gifts of parts of testatrix' real property specifically and definitely described. (Citing authorities.) A gift of a certain undivided interest in a definitely described tract or tracts of land is a specific devise." See also, Gallagher v. O'Brien, supra; Houston Land & Trust Co. v. Campbell, Tex.Civ.App., 105 S.W.2d 430, writ ref.

Appellants urge that this bequest is enlarged to a demonstrative devise by the provision of the will that any devisee who contested the will would "forfeit all right to any benefit and all right and title to any and all property herein devised or bequeathed to him or her, and such right, title and interest to such property, so forfeited, is hereby bequeathed and shall vest in such of my devisees and legatees herein as do not question, contest or give aid in such contest of this my will or of any part thereof, in the same proportion as to value as they otherwise take as to value of my estate under this will." This provision does not enlarge the specific bequest to a demonstrative bequest in that Mrs. Belle Rogers would share under the residuary clause in the value of the forfeited portion as well as appellant children.

Appellants would construe paragraph II of the will as bequeathing to them "all of testator's interest" in these surveys of land in Schleicher County. The will does not so provide and it is significant that testator did not change the will when he inspected it in his attorney's office in July, 1959, which was after all exchanges had been made.

The trial court properly excluded evidence, offered by appellants from the attorney who prepared the will, that several times after execution of the will testator expressed the wish or desire for his children to have the Scheicher County property. It is settled that extrinsic or parol evidence is not admissible for the purpose of adding to, altering, contradicting, detracting from, or varying a will. Huffman v. Huffman, 161 Tex. 267, 339 S.W.2d 885 (1960); Martin v. Brosig, Tex.Civ.App., 113 S.W.2d 279, writ ref.; McCormick & Ray, Texas Law of Evidence, Vol. 2, pp. 543–544, § 1687. This rule prohibits introduction of this evidence to show that testator did not intend an ademption by his alienation of part of the specific property devised.

The trial court properly construed the testator's will as devising definite and designated interests in six described surveys of land to appellant children. These specific bequests were adeemed in part when testator disposed of his interest in four of these surveys after execution of his will.

The judgment is affirmed.