Ola Mae STAHL et al., Appellants,

v.

SHRINER'S HOSPITAL FOR CRIPPLED CHILDREN OF TEXAS et al., Appellees.

No. 5961.

Court of Civil Appeals of Texas, Waco.

April 19, 1979.

Rehearing Denied May 24, 1979.

Philip E. Hamner, San Antonio, for appellants.

Henry C. Meyer, III, Wynn, Brown, Mack, Renfro & Thompson, Fort Worth, James H. Walker and Leonard E. Choate, Dallas, John L. Hill, Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., James R. Riggs, and Katherine L. Chapman, Asst. Attys. Gen., Austin, Clark Murray, Floresville, for appellees.

HALL, Justice.

This is a suit to construe the will of Eloise D. Williams, deceased. The principal questions we must decide are (1) whether the gift intended by testatrix's devise of her 103-acres "home place" to certain nieces and nephews was adeemed when, three months prior to her death, testatrix sold and conveyed the home place in consideration of an $80,000.00 promissory note payable in ten years in annual installments and secured by vendor's lien and deed of trust lien; and, if the bequest was adeemed, (2) whether testatrix intended the note should pass under the residuary clause of her will to the charity-beneficiary named therein. The trial court held the gift was adeemed by the sale, and that the residuary beneficiary received the note. We sustain the ruling of ademption, but we hold the note did not pass under the residual bequest.

The will was executed December 12, 1973. Codicils to the will were executed January 23, 1974, and May 19, 1976. Testatrix died January 7, 1977. The record does not show her age at the time of death, but the only reasonable inference from the record is that she was elderly. Her surviving heirs are a sister Ola Mae Stahl, and three nieces Esta Germer, Joyce Dawson and Martha Kasprzyk. She is survived also by other relatives, including nephews Billy Joe Stahl and Thomas J. (Jack) Williams.

In paragraphs 4, 5 and 6 of her will, testatrix devised her 103-acres "home place" located in Wilson County, Texas, to her nephews Thomas J. (Jack) Williams and Billy Joe Stahl, and her nieces Esta Germer, Joyce Dawson and Martha Kasprzyk, in the following terms:

4.

"I will my home place (consisting of 103 acres of land, more or less, in the A. Trevino Grant, Survey No. 11, in Wilson County, Texas, and conveyed to me by deed of record in Vol. 185, Page 327, Deed Records of Wilson County, Texas) as follows: In regard to the Northwest 40 acres of same, my nephew, Thomas J. (Jack) Williams shall have the option to purchase same by making the following payments: $2,000.00 to Julia Mattke (or to her daughters, share and share alike, if the said Julia Mattke shall predecease me); $2,000.00 to Mittie Anderson or to her husband, Fred Anderson, if the said Mittie Anderson shall predecease me; $2,000.00 to my cousin, Lillie Belle Carey, or to her husband, Jack Carey, if the said Lillie Belle Carey shall predecease me; and $1,000.00 to my nephew, Jimmy Cross (at the request of my deceased husband, Norris Williams) or to Norris Cross, if the said Jimmy Cross shall predecease me. Said option shall be exercised by the said Thomas J. (Jack) Williams within a reasonable time after my death, and in no event, later than six months after the payment by my hereinafter named executor of any and all State Inheritance Taxes and Federal Estate Taxes, that is, when the respective Governments agree as to how much tax is owed. My said nephew, Thomas J. (Jack) Williams, may encumber said 40 acres, in order to make said payments.

5.

"The balance of my said home place (being the Southeast 63 acres of said tract, more or less) I will to Billy Jo Stahl, Esta Germer, Joyce Dawson and Martha Kasprzyk, share and share alike.

6.

"The above named parties may take possession of said land when my Executor shall surrender such land, in his sole discretion, to such parties, and they shall thereafter receive all rents and revenues from the respective tracts of land."

In the first codicil, testatrix added to paragraph 5 the provision that if any beneficiary therein predeceased her, then the beneficiary's share would go to "his or her descendants, per stirpes."

The will contained other devises and bequests which we shall notice later. Then, in paragraph 17, testatrix willed her residual estate to "the Masonic Home or Homes for Crippled Children, to be used only in Texas."

On October 5, 1976, testatrix sold and conveyed her 103-acres home place to Norman Kallies and wife, Audrey Jane Kallies, by general warranty deed. The deed was recorded in the deed records of Wilson County on November 2, 1976. The consideration for the conveyance was "the sum of Ten Dollars and other good and valuable consideration in cash" and, additionally, the grantees' promissory note for the principal sum of $80,000.00, bearing interest at the rate of six per cent per annum until paid. The principal was payable in equal, annual installments of $8,000.00, and the interest was payable annually, but the grantees reserved the right of prepayment at any time, without penalty. The note was secured by vendor's lien retained in the deed of conveyance and by deed of trust lien executed by the grantees. Because of a handwritten alteration on the face of the note, there is a discrepancy between that instrument and recitals in the deed and deed of trust as to whether the first annual payments of principal and interest were due on November 1, 1976, or November 15, 1977. The contesting parties stipulated the first payment had been made at the time of testatrix's death, but the executor later testified the first payment was due in November, 1977, and was made after the testatrix died.

Appellee Clark Murray was the scrivener of testatrix's will. He is also independent executor under the will. He was also the named Trustee in the previously mentioned deed of trust. After the will was probated, he initiated this suit, as executor, in the County Court of Probate seeking a construction of the term "Masonic Home or Homes for Crippled Children" in paragraph 17 of the will. He joined as defendants testatrix's heirs Ola Mae Stahl, Esta Germer, Joyce Dawson and Martha Kasprzyk; Texas Scottish Rite Hospital for Crippled Children; Shriners' Hospital For Crippled Children of Texas; Masonic Home and School of Texas; and The Attorney General of Texas.[1] In his petition, Murray asked the court to answer these questions: "Does the residual estate go to Masonic Home and School, Scottish Rite Hospital for Crippled Children, or Shrine Hospital for Crippled Children, or is such Paragraph [17] so uncertain as to be void, thereby creating intestacy as to said residual Estate?" He alleged there was no Masonic Home for Crippled Children, but that the two previously mentioned hospitals for crippled children existed and were owned and operated by the Masonic Order in Texas. He stated in his pleading that although he authored the will for testatrix he had not the slightest idea what she meant by the term "Masonic Home for Crippled Children"; that when he wrote the will he knew testatrix's deceased husband had been active during his lifetime in the Masonic Order; and that he "thought she knew what she was talking about."

After all the original parties to the suit had answered, and upon their motions, the case was transferred to the District Court for trial. Thereafter, Thomas J. Williams and Billy Joe Stahl entered the case as intervenors, and sundry pleadings were filed by all the parties except the executor Murray, and testatrix's heir Martha Ka-

1. The Attorney General was joined under the terms of Article 4412a, Vernon's Tex.Civ.St., which requires his presence as a necessary party for and on behalf of the interests of the general public in any judicial proceeding brought to construe or contest a devise or bequest for charitable purposes.

sprzyk.[2] The positions and contentions of the parties when the case went to trial may be summarized as follows: Testatrix's heirs Ola Mae Stahl, Esta Germer and Joyce Dawson, and intervenors Billy Joe Stahl and Thomas J. Williams, contended (1) that because there was no entity known as "the Masonic Home or Homes for Crippled Children" the residuary clause was void for uncertainty and testatrix's residual estate should pass to her heirs; and (2) that it was testatrix's intent that her nieces and nephews named in paragraphs 4 and 5 receive the economic benefit of the respective interests in the land therein devised to them, that accordingly the gift was not adeemed by the sale of the home place by testatrix and they are entitled to the note and the liens securing it and all payments on the note since testatrix's death; and (3) in any event, testatrix did not intend that the note and liens should pass under the residuary clause of her will. The Attorney General, Masonic Home and School of Texas, Texas Scottish Rite for Crippled Children, and Shriners' Hospital for Crippled Children asserted (1) that the gift of the residuary estate to "Masonic Home or Homes for Crippled Children, to be used only in Texas," was not void for uncertainty or vagueness, but evidenced an intent to benefit children in Texas through one or more of the institutions supported by Masonic organizations for that purpose, to wit, the three Masonic institutions which are parties to this suit, and that they should share the proceeds of the residual estate equally; and (2) that the specific devise of the home place by the testatrix was adeemed by extinction and alienation and revoked when testatrix sold the property, and that the provisions of the will show that testatrix intended that the $80,000.00 note should pass to the beneficiary of her residual estate.

After a hearing without a jury, the trial court found and concluded that the specific devise of the home place in paragraphs 4 and 5 of the will was "adeemed, revoked, and became inoperative because of the disappearance of the 103 acres of land" from testatrix's estate by reason of the sale; that the sale "constituted an equitable conversion of the real estate into personal property, to wit [the $80,000.00 promissory note], and that the same became a part of the residuary estate of the Testatrix"; and that it was the intention of the testatrix in paragraph 17 . . . that her entire residuary estate, including the note, vest in and go to "Shriners Hospital for Crippled Children of Texas and Texas Scottish Rite Hospital for Crippled Children, both being charitable beneficiaries of Masonic origin, and said residuary estate to be used by said organizations in Texas only." Upon those determinations, judgment was rendered that the "entire residuary estate, including [the $80,000.00 note]," was vested in the named Shriners Hospital and Scottish Rite Hospital to be used by them only in Texas.

The Masonic Home and School of Texas did not appeal.

Ola Mae Stahl, Esta Germer, Joyce Dawson, Billy Joe Stahl and Thomas J. Williams appeal. Their contentions here are the same they made on the trial, and they attack the contrary determinations made by the trial court. They also assign error to the court's exclusion of certain evidence offered by them, which we shall notice later.

The provisions in the will may be summarized as follows:

## 1.

All oil, gas and mineral interests in Nacogdoches and Hardin Counties to my nephew Thomas J. (Jack) Williams, or to his children share and share alike if he predecease me.

## 2.

A life estate in Lots 1 and 2 in Block 50 of the Old Town of Sutherland Springs, Wilson County, Texas, to my brother

John Dawson with remainder to my cousin Lillie Belle Carey and her husband Jack Carey, share and share alike, but in fee to them if John Dawson shall predecease me.

### 3.

All my jewelry, clothing, and other personal effects and my automobile, and all my household furniture and furnishings (including all in rent houses) to my niece Irene Williams, to be disposed of by her in accordance with my non-testamentary directions to her attached to this will; provided that any items not mentioned in the directions are given to Irene. [In the second codicil, this paragraph was amended to provide that all jewelry, clothing and other personal effects were given to Mary Margaret Duelm (whose relationship to testatrix was not shown in the will), and that all household furniture and furnishings still passed to Irene Williams, to be disposed of by Duelm and Williams in accordance with non-testamentary directions attached to the will; and provided that any items not mentioned in the directions were given to Duelm and Williams. It was also provided in the codicil that the automobile was given to testatrix's brother, John Dawson].

[In the first codicil, a new bequest was made, being $1,000.00 cash to Mary Margaret Duelm. In the second codicil that cash bequest was increased to $2,000.00].

### 4, 5, and 6.

[These paragraphs and the addition made to paragraph 5 in the first codicil have been previously set forth].

### 7.

$5,000.00 cash to my sister Ola Mae Stahl and husband, Herbert Stahl, or to the survivor if one predecease me. [This bequest was amended in the first codicil to provide that if Ola Mae Stahl predeceased testatrix, then the $5,000.00 should be divided evenly between Herbert Stahl, Mary Dawson, Martha Dawson and Kathleen Williams, "provided that none of them shall receive more than $1,250.00"].

### 8.

2,000.00 cash to Mary Jones and husband Pat Jones or to the survivor if one predecease me, or to their children, share and share alike if both predecease me.

### 9.

2,000.00 cash to Allen Wilson.

### 10.

My executor shall furnish tombstones for the graves of Mr. and Mrs. Will Heathcock and their infant daughter and for the grave of my brother John Dawson if he predecease me, and the amounts to be spent therefor shall be solely within the discretion of the executor. The executor is relieved of this obligation if the tombstones are placed at the graves before he can do so. My executor shall also pay the funeral expenses of my brother John Dawson if they are owed at the time of my death or incurred during administration of my estate.

### 11.

"If any bequest shall lapse because there shall be no taker of such bequest at the time of my death, such lapsed bequest shall form and be a part of my residuary estate as next below described."

### 12.

"All the rest, residue and remainder of my estate and property (and in this connection, all lapsed special bequests shall pass to and become a part of my residuary estate described in this paragraph) I will to Clark Murray in Trust for the following named purposes," provided that payment of all debts, expenses of administration, State and Federal taxes shall receive priority out of the residual estate, and provided that commissions to the executor and trustee, (or attorney's fees in lieu thereof) and the expenses of the tombstones shall be paid out of the residual estate.

### 13.

"If there shall be insufficient cash, or personal property easily converted to cash (such as bonds, stocks, savings accounts, time deposits and checking accounts) at my death to pay said debts, expenses of administration, State Inheritance and Federal Estate Tax, if any, and any and all other payments directed by me to my said Executor to be made, then said cash bequests shall be prorated."

### 14.

Clark Murray is appointed Independent Executor and Trustee without bond under this will and may charge my estate reasonable commissions for those services, or, in lieu of either commissions he may charge reasonable attorney's fees.

### 15.

[The executor was granted broad powers in dealing with the properties of the estate during administration, including the right "to sell and deliver and/or convey any portion of my estate . . . execute oil, gas or other mineral leases on any land of my estate . . and execute surface leases," and then the purposes of the trust were set forth as follows].

Initially, the trust shall be for my brother, John Dawson, as follows: $50.00 per month to or for him, unless the trustee shall decide, solely at his discretion, that no money or more money is necessary and shall be expended for my brother's care and maintenance.

### 16.

"The trust shall continue so long as John Dawson shall live, and upon his death, the entire Trust estate (including corpus or principal, and income) shall vest in fee simple in the Masonic Home or Homes for Crippled Children, to be used only in Texas, subject to all other provisions of this Will and subject to administration on my estate."

### 17.

"If the said John Dawson shall be deceased at the time of my death, there shall be no Trust, and my entire residuary estate, as above described in paragraph 12, shall vest in fee simple, in said Masonic Home or Homes for Crippled Children and to be used in Texas only, subject to the above and foregoing provisions of this Will, and subject to administration."

### 18.

[Board discretionary powers were vested in the Trustee in dealing with the trust estate].

### 19.

If in the discretion of the Trustee there shall be sufficient amount of my estate to care for John Dawson, then before the death of John Dawson the Trustee may make advancements to Masonic Home or Homes for Crippled Children to be used only in Texas, provided that if such advancements are made and the trust funds are depleted while John Dawson is alive, then the Masonic Home or Homes shall return enough of the advances needed for the care of John Dawson.

### 20.

[Again, broad discretionary powers of the trustee in dealing with the trust estate were set forth, and the will was then concluded with the following paragraph].

"Notwithstanding the above and foregoing paragraph 15 hereof, my executor shall not sell any land specially bequeathed herein, unless it shall be necessary to pay my debts, expenses of administration, State Inheritance and Federal Estate Taxes, if any, said commissions and/or attorney's fees, and any and all other sums directed by me to be paid by my said Executor and/or Trustee, and all personal property (except that willed herein to Irene Williams) shall be first exhausted, and, notwithstanding the cash bequests mentioned herein, my Executor and/or Trustee shall have the right to use all cash to pay the matters mentioned in

this paragraph, and may use my checking accounts and other accounts and things easily converted to cash (as above stated) to pay such things. The trust for my brother, John Dawson, shall have first call on my cash, or things easily converted to cash, as above stated. Whether such cash is needed for the trust for my said brother shall be solely within the discretion of my Executor and/or Trustee, and if such cash shall be exhausted before the death of my said brother, my Executor and/or Trustee shall not be liable therefor."

Testatrix was married to Norris Williams who died in 1969. Neither had nor adopted any children. They lived on the Dawson "home place" which had been in the Dawson family for about one hundred years. The home place was conveyed to testatrix by deed in September, 1936. She continued living there after her husband's death.

Testatrix was the daughter of William Elijah Dawson and Elsie Lenora Dawson. She had two brothers, Walter Guy Dawson who died in 1956, and John West Dawson who died in September, 1976; and she had a sister Ola Mae Dawson, now Ola Mae Stahl, who survives. Esta Germer and Joyce Dawson are the daughters of Walter Guy Dawson. Martha Kasprzyk is the daughter of John West Dawson. Billy Joe Stahl is the son of Ola Mae Stahl. Thomas J. (Jack) Williams was the nephew of testatrix's husband. Julia Mattke and Mittie Anderson were her husband's nieces. Except as identified in the will, testatrix's relationship to other beneficiaries named in the will is not shown in the record.

Testatrix's husband became a member of a local lodge of the Masonic Order in 1919, but was suspended in 1928 for nonpayment of dues. He was reinstated in 1944, and he was a member in good standing from June, 1965, through June, 1969. Although testatrix was eligible to join the women's auxiliary of the Masons, she did not.

The Masonic Order sponsors three charitable institutions which operate exclusively in Texas for the benefit of children. They are the Masonic Home and School of Texas, located in the City of Fort Worth, which provides care for the homeless children of Texas; and the Texas Scottish Rite Hospital for Crippled Children, located in the City of Dallas, and the Shriners' Hospital for Crippled Children of Texas, located in the City of Houston, which provide care for the crippled children of Texas without charge.

A portion of the annual dues of $10.00 paid by testatrix's husband to his Lodge went indirectly to support the Masonic Home and School of Texas. Also, during his membership, he occasionally made contributions directly to the Texas Scottish Rite Hospital for Crippled Children.

The executor has not caused an inventory and appraisement to be made of testatrix's estate, but he testified the estate consists of these properties: The $80,000.00 note in question upon which the first payment was made after testatrix's death, and the liens securing the note; the royalty and mineral interests described in paragraph one of the will; a one-half interest in the two lots in Sutherland Springs described in paragraph two of the will; a checking account in the amount of $4,500.00; a savings account in the approximate amount of $300.00; and the executor's checking account. The amount of the executor's account is not shown in the proof.

It is undisputed in the record that there is no organization or institution named or known as "Masonic Home for Crippled Children." Appellants contend the inexact designation by that name of the beneficiary in the residual clause of the will renders the bequest void and unenforceable. We disagree. The language used in the bequest evidences the charitable intent of testatrix to help crippled children in Texas through one or more institutions sponsored by Masons. The Texas Scottish Rite Hospital for Crippled Children and the Shriners' Hospital for Crippled Children are the only such institutions in existence. The evidence supports the trial court's finding that they were the institutions intended by the testatrix's bequest to "Masonic Home or Homes for Crippled Children to be used in Texas

only" in paragraph 17 of the will. The court's award to them of the residual bequest to carry out the charitable purpose set forth therein was correct. *See, Bode v. Loeffler*, 540 S.W.2d 465 (Tex.Civ.App.—San Antonio 1976, writ ref'd).

■ It is the rule in Texas that absent a contrary intention expressed in the will, the alienation or disappearance of the subject matter of a specific legacy from the testator's estate in his lifetime adeems the bequest. *Rogers v. Carter*, 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.).[3]

■ Although appellants pleaded that testatrix's devise of the home place was a specific legacy, they now assert it was demonstrative and therefore not subject to ademption. The contention is overruled. Whether a devise is general, demonstrative, or specific must be determined from the terms of the will. *Lake v. Copeland*, 82 Tex. 464, 17 S.W. 786, 787 (1891). It is plain that testatrix intended by the devise in question to vest fee title to a distinctly described tract of land in the named beneficiaries. A similar devise was held to be specific in *Currie v. Scott*, 144 Tex. 1, 187 S.W.2d 551, 553.

The land was not a part of testatrix's estate when she died, and the devise of it was thereby rendered inoperative. Appellants seek a construction of the will which would substitute the proceeds of the sale in the place of the land in the devise. That construction would call for substantial revision of paragraphs 4 and 5. Although that would be done to effectuate testatrix's intent, we do not find the intention to bequest the purchase money note in lieu of the land expressed in the will. Accordingly, we hold the legacy was adeemed. Under this holding, the trial court's rulings on equitable conversion and revocation are rendered immaterial, and we do not review them.

■ Appellants argue that by virtue of the express vendor's lien and the deed of trust lien testatrix retained an interest in the land which passed to them under the devise of the home place, carrying with it the purchase-money note. We cannot agree. The title conveyed by the grantees to the trustee in the deed of trust and the title retained by testatrix in the vendor's lien was bare legal title. In Texas, a vendor's lien and a deed of trust lien are not mortgages (under which the grantee gets only a lien, and title remains in the grantor), but are limited to the character of security for the purchase-money debt, and exist only for that purpose. They do not represent an interest in the land in the sense the term is used by appellants. See, *First Baptist Church of Fort Worth v. Bible Baptist Seminary*, 162 Tex. 441, 347 S.W.2d 587, 590 (1961); *Humphreys-Mexia Co. v. Gammon*, 113 Tex. 247, 254 S.W. 296, 300 (1923); *Carroll v. Edmondson*, 41 S.W.2d 64, 65 (Tex.Com.App.1931); 39 Tex.Jur.2d (Rev.) 13–16, Mortgages And Trust Deeds, §§ 5, 7.

■ During the trial, appellants offered proof, including statements made by testatrix after she sold the home place, to show that testatrix intended that the nephews and nieces named in her will as beneficiaries of the devise of the home place should receive the proceeds of the sale. Appellees objected, and the proof was excluded. Appellants assign error to that ruling. The evidence was properly excluded. Extrinsic evidence, including oral declarations of the testator, is not admissible for the purpose of showing the testator's intent under the will. *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 889 (1960); *Schelb v. Sparenberg*, 133 Tex. 17, 124 S.W.2d 322, 326 (1939). In *Huffman* our Supreme Court said, "The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the power of others, after he is dead, to change or add to his will or to show that he intended some-

---

**3.** An annotated treatment of the development at common law of the doctrine of ademption, and of the various approaches used by the courts of our nation in applying the rule, may be found in *Pepka v. Branch*, 155 Ind.App. 637, 294 N.E.2d 141 (1973).

thing not set out in, or different from, that set out in his will." Under those rules, extrinsic evidence to show that the testator did not intend an ademption by alienation was held properly excluded in *Rogers v. Carter,* supra [at 385 S.W.2d 567].

The remaining issue for decision is disposition of the note. We hold the note did not pass under the will and that it goes to the surviving heirs.

 We recognize that our holding is contrary to the general rules for construction of wills which provide that the law does not favor a construction that results in partial intestacy, and that the fact of execution of a will raises a presumption against intended intestacy by the deceased, and that the presumption is enhanced by the inclusion of a residuary clause in the will. *Haile v. Holtzclaw,* (Tex.1967) 414 S.W.2d 916, 922; *Ellet v. McCord,* 41 S.W.2d 110, 113 (Tex.Civ.App.—Austin 1931, writ ref'd). But the single purpose of all rules developed by the courts for the construction of a will is to ascertain the intention of the testator and "before it all such rules fall." *Welch v. Straach,* (Tex.1975) 531 S.W.2d 319, 322. Under that cardinal principle, the presumption against intestacy, even with a residuary clause in the will, must yield to the contrary intention expressed in the will. *Moss v. Helsley,* 60 Tex. 426 (1883); *Bittner v. Bittner,* 45 S.W.2d 148, 152 (Tex.Com. App.1932). It cannot be used "as an excuse for violating the testamentary scheme." *Stewart v. Selder,* (Tex.1971) 473 S.W.2d 3, 8.

 The language used in the entire will, considered in connection with the relation and situation of the parties at the time the will was executed, is used to determine the testator's intention; and it must be given a fair, practical and reasonable interpretation. *Briggs v. Peebles,* 144 Tex. 47, 188 S.W.2d 147, 149, 150 (1945). A clause in a will should be construed so as to be both consistent in itself and consistent with the whole language and purpose of the will. *Darragh v. Barmore,* 242 S.W. 714, 717 (Tex.Com.App.1922).

██ In our case appellees-hospitals were so unfamiliar to testatrix that she did not know their names. They were secondary beneficiaries under the residuary clause. The paramount use for the residuary estate intended by testatrix was to provide the needs of her brother, John, if he survived her. Even under that contingency the will expressed a restrictive attitude toward the residuary estate in relation to the real estate. The executor was granted broad powers regarding the estate, but under the express terms of the will sale of the real estate was permitted only if necessary to pay debts, taxes, or costs of administration. There was no provision for sale of the real estate to fund the residuary estate for John's care nor for any other purpose. Testatrix provided that any bequest which lapsed "because there shall be no taker" would become a part of the residuum, but she hedged against the likelihood of such lapses in most instances, and especially where her real estate was concerned, by providing for alternative beneficiaries.

The $80,000.00 note in question is the major asset in testatrix's estate. It is readily identifiable in the estate. It resulted from the sale of the 103-acres home place which had been in testatrix's family for 100 years. Testatrix did not sell the home place (in October, 1976) until after her brother John had died (in September, 1976) and need of funds for his care after her death had been obviated. Because John predeceased testatrix, the "entire residuary estate" was vested in the hospitals. Did testatrix intend it included the $80,000.00 note? We hold she did not. A mechanistic construction of the will following the presumption against intestacy would place the $80,000.00 note in the residuary estate, but the terms of the will do not support that intention. The language of the will shows a minimal gift intended for the residuary legatee composed mainly of cash money from sources other than the sale of testatrix's real estate, not needed for the care of testatrix's brother (if he survived her) nor for the cash bequests. The $80,000.00 note represents the proceeds of sale of real estate made by her with knowledge that

funds were no longer necessary for the care of her brother. The real estate producing the note was devised in the will to testatrix's nephew (Williams) by her deceased husband; and another nephew (Stahl) and three nieces who were her blood kin. The nieces were three of her four surviving heirs; the nephew Stahl was the son of her sister Ola Mae Stahl, who was the other surviving heir. The construction of the will placing the note in the residuum disinherits testatrix's four surviving heirs (with the exception of the possibility of a small amount of cash to testatrix's sister, Ola Mae Stahl) and passes the bulk of testatrix's estate to the residuary legatee. Clearly, that intention was not intended by testatrix, and would result in an unintended windfall to the residuary beneficiary. If it can be said the will is not clear on the question, then our conclusion testatrix died intestate as to the note is buttressed by the rule which calls for the construction in accordance with the laws of descent and distribution where an ambiguity exists. *McMullen v. Sims*, 37 S.W.2d 141, 143 (Tex. Com.App.1931).

The judgment is reversed, and the cause is remanded to the trial court for entry of judgment in accordance with this opinion.