ACCEPTED
13-15-00267-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
10/26/2015 4:32:31 PM
Dorian E. Ramirez
CLERK

13-15-00267-CV

IN THE COURT OF APPEALS

THIRTEENTH DISTRICT

CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

10/26/2015 4:32:31 PM
DORIAN E. RAMIREZ
Clerk

PAT A. BOOTHE; STERLING PRICE BOOTHE;
AND MICHAEL GEORGE MALONE,

Appellants

V.

ELIZABETH H. GREEN, FRANK F.; HENDERSON, JR.; WELDON W.
DIETZE; JOHN F. DIETZE, JR.; CAROLINE D. BRADFORD;
CHRISTIN N. DIETZE; AND ALEXIS E. DIETZE,

Appellees

ON APPEAL FROM THE 267TH JUDICIAL DISTRICT COURT
DEWITT COUNTY, TEXAS

## APPELLANTS' BRIEF

Kevin F. Mickits (SBN 14011500)
John C. Heymann (SBN 09565300)
UPTON, MICKITS & HEYMANN, L.L.P
Lincoln Center
7800 IH-10 West, Suite 740
San Antonio, Texas 78230
t/210.881.3071; f/210.881.3090

Frank Weathered (SBN 20998600)
DUNN, WEATHERED,
COFFEY & KASPERITIS, P.C.
611 South Upper Broadway
Corpus Christi, Texas 78401
t/361.883.1594; f/361.883.1599
E-MAIL: frank@weatheredlaw.com

ATTORNEYS FOR APPELLANTS

ORAL ARGUMENT REQUESTED

| | |
|---|---|
| **Plaintiffs/Counter-Defendants/ Appellants:** | **Trial/Appellate Counsel:** |
| Michael Malone; Price Boothe; and, Pat Boothe | Frank Weathered DUNN, WEATHERED, COFFEY, RIVERA & KASPERITIS, P.C. 611 S. Upper Broadway Corpus Christi, Texas 78401 |
| | Kevin F. Mickits John C. Heymann UPTON, MICKITS & HEYMANN, L.L.P Lincoln Center 7800 IH-10 West, Suite 740 San Antonio, Texas 78230 |
| **Defendants/Appellees:** | **Trial/Appellate Counsel:** |
| Elizabeth H. Green; Frank F. Henderson, Jr.; Weldon W. Dietze; John F. Dietze, Jr.; Caroline D. Bradford; Christin N. Dietze; and, Alexis E. Dietze | Frank F. Henderson, Jr. 113 W. Santa Rosa Street P.O. Box 366 Victoria, Texas 77902-0366 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.     SUMMARY JUDGMENT STANDARD OF REVIEW.. . . . . . . . . . . . . . . 7

    II.    TITLE TO THE MINERALS . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

         A.    RULES OF WILL CONSTRUCTION. . . . . . . . . . . . . . . . . 7

         B.    CORA'S WILL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         C.    THE ADEMPTION DOCTRINE DOES NOT DICTATE
             A DIFFERENT RESULT. . . . . . . . . . . . . . . . . . . . . . . 10

         D.    OIL AND GAS LEASES IN THE 1940S SUPPORT
             BOOTHE-MALONE'S CLAIM. . . . . . . . . . . . . . . . . . . 20

    III.   MONEY HAD AND RECEIVED. . . . . . . . . . . . . . . . . . . . . . . . 20

         A.    GREEN-HENDERSON HOLD NO OWNERSHIP INTEREST IN
             THE ROYALTY PAYMENTS.. . . . . . . . . . . . . . . . . . . . 21

B. **GREEN-HENDERSON LACK STANDING**. . . . . . . . . . . . . . . . . . 22

**RELIEF REQUESTED**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**CERTIFICATE OF WORD COUNT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**APPENDIX**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# INDEX OF AUTHORITIES

## RULES

*Amoco Prod. Co. v. Smith,* 946 S.W.2d 162
(Tex. App.-El Paso 1997, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Burch v. McMillan,* 15 S.W.2d 86 (Tex. Civ. App.—Eastland 1929, no writ). . . . 11

*Doss v. Homecomings Fin. Network, Inc.,* 210 S.W.3d 706
(Tex. App.-Corpus Christi 2006, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Freeman v. Stephens Prod. Co.,* 171 S.W.3d 651
(Tex. App.-Corpus Christi 2005, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690 (Tex. 1986). . . . . . . . . . . . . 22, 23

*Grisham v. Lawren*ce, 298 S.W.3d 826 (Tex. App.—Tyler 2009, no pet.). . . . . . . 16

*Grynberg v. M-I L.L.C.,* 398 S.W.3d 864
(Tex. App.-Corpus Christi 2012, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Holloway's Unknown Heirs v. Whatley,* 104 S.W.2d 646
(Tex. Civ. App.—Beaumont 1937) *aff'd* 131 S.W.2d 89 (Tex. 1939). . . . . . . 16, 17

*Hudgeons v. Hallmark,* 2015 WL 5634395 *2
(Tex. App.-Fort Worth 2015, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Huggins v. Royalty Clearinghouse, Ltd.,* 2015 WL 4637630
(W.D. Tex. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jones v. Fuller,* 856 S.W.2d 597 (Tex. App.-Waco 1993, writ denied). . . . . . . . . 12

*Luckel v. White* 819 S.W.2d 459 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Murphy v. Hunnicutt,* 199 S.W.2d 298
(Tex. Civ. App.—Texarkana 1946, writ ref.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Parker v. Parker*, 131 S.W.3d 524
(Tex. App.—Fort Worth 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Peacock v. Owens,* 259 S.E.2d 488 (Ga. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Perfect Union Lodge v. Interfirst Bank of San Antonio*, 748 S.W.2d 218
(Tex. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Philipello v. Nelson Family Farming Trust*, 349 S.W.3d 692
(Tex. App.—Houston [14th Dist.] 2011, pet. denied). . . . . . . . . . . . . . . . . . . . . . 12

*Rogers v. Carter*, 385 S.W.2d 563
(Tex. Civ. App.–San Antonio 1965, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . 11, 16

*San Antonio Area Foundation v. Lang*, 35 S.W.3d 636 (Tex. 2000).. . . . . . . . 7, 8, 16

*Schlittler v. Smith*, 101 S.W.2d 543 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Spiegel v. KLRU Endowment Fund,* 228 S.W.3d 237
(Tex. App.-Austin 2007, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Stahl,* 610 S.W.2d at 148. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stanolind Oil & Gas Co. v. Terrell,* 183 S.W.2d 743
(Tex.Civ.App.—Galveston 1944, writ ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Steger v. Muenster Drilling Co., Inc.,* 134 S.W.3d 359
(Tex. App.—Fort Worth 2003, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stewart v. Selder*, 473 S.W.2d 3 (Tex. 1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Terrell v. Graham,* 576 S.W.2d 610 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATEMENT OF THE CASE

This is a will construction case. *See* CR 170, 268. Appellants ("Boothe-Malone") were Plaintiffs and Counter-Defendants below. CR 170. Appellees ("Green-Henderson") were Defendants and Counter-Plaintiffs. CR 268. At issue is title to an undivided 1/18th mineral interest in 1,448.50 acres of land located in DeWitt County. CR 170. Both sides moved for partial summary judgment on title. CR 110, 128. The trial court granted Green-Henderson's motion and denied Boothe-Malone's, ruling that Green-Henderson have title to the subject minerals. CR 275. Green-Henderson then filed a second motion for partial summary judgment seeking recoupment of oil and gas royalty payments based on a claim of money had and received. CR 279. The trial court granted this motion as well. CR 366. Ultimately, the two summary judgments were merged into a final judgment, which Boothe-Malone are now appealing. CR 375, 386.

## STATEMENT REGARDING ORAL ARGUMENT

This will construction case involves the probate doctrine of "ademption." Ademption describes the acts by which a specific legacy becomes inoperative because of the "disappearance" of its subject matter from the testator's estate during his lifetime. Surprisingly, the Thirteenth Court has never addressed ademption, at least

1

not according to WestLaw. This case presents the opportunity to do so. Because it is the first time, oral argument will be helpful to the Court.

## ISSUES PRESENTED

1.    Did the trial court err in granting Green-Henderson's motion for summary judgment on the issue of title to the minerals?

2.    Did the trial court err in denying Boothe-Malone's motion for summary judgment on the issue of title to the minerals?

3.    Did the trial court err in granting Green-Henderson's motion for summary judgment on the issue of money had and received?

## STATEMENT OF FACTS

At issue in this appeal is title to an undivided 1/18th mineral interest in 1,448.50 acres of land, more or less, located in DeWitt County, Texas, and more particularly described in a mineral deed dated August 10, 1927, from J.L. Dubose to Cora McCrabb, John McCrabb, and Mary Atkinson. CR 147.

The relevant timeline is as follows:

**1924** - Cora McCrabb executed her Last Will and Testament. CR 150. Her Will provided that:

> II. All of the *acreage property*, to-wit, farm *lands* and pasture *lands* owned by me at the time of my death, and wheresoever situated, I do give unto my three grand-children, Jessie McCrabb, J.F. McCrabb, and Mary Lee McCrabb, being children of my son, John McCrabb, said

2

property to go to and vest in said three children, share and share alike, and shall be held by them in fee simple and forever.

III. *Subject to the terms of Paragraph Two hereof*, all of the rest and residue of my estate, including any and all personal property and my home in Cuero, and my old home in Thomastown, and including any stocks, bonds, and notes, and my personal jewelry and including any land owned by me in any city or town; in fact, including all property of every kind, *save and except pasture and farm acreage property*, I do give to my grand-daughter, Jessie McCrabb, to be held, owned and enjoyed by her in fee simple and forever.

CR 150 (emphasis added). At the time of the 1924 Will, Cora McCrabb, John McCrabb and Mary Atkinson owned equal undivided fee interests in the 1,448.50 acres, which was farm land and pasture land, including both the surface and the minerals.

**August 10, 1927** - Cora McCrabb, John McCrabb and Mary Atkinson conveyed the 1,448.50 acres to J. L. Dubose in fee. CR 145-46. Dubose then simultaneously re-conveyed an undivided one-half (½) of the oil, gas and minerals in, under, and that may be produced from the 1,448.50 acres back to Cora McCrabb, John McCrabb, and Mary Atkinson, in equal shares. CR 147-48.

The deed out of Dubose and back into the McCrabbs and Atkinson recited that:

Whereas, in the trade wherein and whereby I [ referring to J. L. Dubose] acquired said land, it was agreed by and between myself and the said Mrs. Cora E. McCrabb, John S. McCrabb and Mrs. Mary E. Atkinson that they should reserve and retain for themselves an undivided ½ of all oil, gas sulfur, coal and minerals of any kind and every kind, character or nature, on or under said 1,448 ½ acres of land and at my request said

3

retention and reservation of said oil, gas and minerals was not specified and included in the deed from Mrs. Cora McCrabb, John S. McCrabb and Mrs. Mary E. Atkinson to me, for the reason that I did not desire my deed to have this provision in it, for my convenience and for my personal reasons; and

Whereas, it was agreed by and between the said Mrs. Cora E. McCrabb, John S. McCrabb and Mrs. Mary E. Atkinson and myself that instead of reserving the oil, gas and minerals in said deed that I should simultaneously with the execution of deed to me execute to said parties a bill of sale, transfer, assignment and conveyance to an undivided ½ half of all gas, oil and minerals of every kind on or under said 1,448 ½ acres of land.

CR 147.

**1929** - Cora McCrabb died and her Will was probated in the County Court of DeWitt County, Texas. CR 149. At the time of her death, she owned an undivided 1/6th mineral interest (1/3 of ½) in the subject property, which was for all intents and purposes reserved when the property was otherwise sold in 1927 to J. L. Dubose. *See* CR 145-48.

Boothe-Malone are the successors-in-interest to an undivided 1/3 of Cora's 1/6[th] (1/18[th]) mineral interest in the 1,448.50 acres. CR 170. They acquired their interest through J.F. McCrabb, one of Cora's grandchildren, by virtue of Paragraph II of Cora's Will. *Id.* On the other hand, Green-Henderson claim that they acquired the same undivided 1/18[th] interest through their predecessor-in-interest, Jessie McCrabb,

4

another of Cora's grandchildren, by virtue of Paragraph III of the same Will, and that Boothe-Malone acquired no interest in the 1,448.50 acres. CR 268.

Consistent with Boothe-Malone's claim, but not necessary to their claim, all or portions of the 1,448.50 acres were leased for oil and gas in 1941 and 1943, and the leases were executed by J.F. McCrabb, Boothe-Malone's predecessor in title, Jessie McCrabb Houchins, Green-Henderson's predecessor in title, John J. McCrabb, Cora McCrabb's son and the executor of her estate, and the remaining mineral interest owners. CR 154-169. These leases evidenced the fact that J.F. McCrabb acquired a mineral interest in the subject property by virtue of Cora's Will, and that Jessie E. Houchins and John S. McCrabb acknowledged that interest by executing the same leases. If J.F. McCrabb had not acquired an interest in the 1,448.50 acres through Cora's Will, he would not have owned or claimed any interest in the subject property and, consequently, he would not have executed the leases. Since Cora's death, Boothe-Malone and their predecessors-in-title have been either in possession or entitled to possession of the subject mineral interest.

## SUMMARY OF THE ARGUMENT

Cora McCrabb's 1924 Last Will and Testament specifically bequeathed the subject land to her three grandchildren. In 1927, prior to her death, she sold her interest in the surface estate and an undivided ½ of the mineral estate to J. L. Dubose,

5

but retained an undivided 1/3 of the remaining ½ mineral interest. At the time of her death in 1929, she owned this undivided 1/6 mineral interest. Because it was a portion of the specific bequest contained in paragraph II of her Will, it necessarily passed to her three grandchildren equally (1/18 to each). The residuary clause in paragraph III of the Will was ineffective as to the specific bequest contained in paragraph II. This is because the mineral interest retained by Cora did not suffer ademption. Furthermore, the residuary clause contained "save and except" language which specifically excluded the taking of the subject property, or any portion thereof, by Jessie McCrabb pursuant to the residuary clause. As a matter of law, Boothe-Malone own the disputed mineral interest. This Court should therefore reverse the judgment awarding title to Green-Henderson and render judgment awarding title to Boothe-Malone.

Because Boothe-Malone own title to the 1/18 mineral interest at issue, they were the rightful recipients of the royalty interests paid them by the operator under the oil and gas lease on the subject property. Therefore, the trial court erred in awarding Green-Henderson any "recoupment" of the royalty payments based on a theory of money had and received. The court also erred because Green-Henderson lack standing to assert money had and received.

**ARGUMENT**

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Both sides moved for traditional summary judgment as a matter of law on the issue of title. The trial court granted Green-Henderson's motion and denied Boothe-Malone's. The court of appeals reviews these rulings *de novo* because they present a question of law. *E.g. Grynberg v. M-I L.L.C.,* 398 S.W.3d 864, 873 (Tex. App.-Corpus Christi 2012, pet. denied). When both sides move for traditional summary judgment on the same issue and the trial court grants one motion and denies the other, as here, the court of appeals determines all questions presented and, if it determines the trial court erred, renders the judgment the trial court should have rendered. *Id.* Here, the trial court erred in granting Green-Henderson's motion for summary judgment and denying Boothe-Malone's. Therefore, this Court should reverse the trial court's judgment on title and render judgment that title is in Boothe-Malone.

## II. TITLE TO THE MINERALS

### A. RULES OF WILL CONSTRUCTION

In construing a will, the court's focus is on the testatrix's intent. *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). This intent must be ascertained from the language found within the four corners of the will. *Id.* Determining a testatrix's intent from the four corners of a will requires a careful

examination of the words used. *Id.* If the will is unambiguous, a court should not go beyond the will's specific terms in search of the testatrix's intent. *Id.* Whether a will is ambiguous is a question of law for the court. *Steger v. Muenster Drilling Co., Inc.,* 134 S.W.3d 359, 373 (Tex. App.—Fort Worth 2003, pet. denied). A will is ambiguous only when the application of established rules of construction leaves its terms susceptible to more than one reasonable meaning. *Id.* If the court can give a certain or definite legal meaning or interpretation to the words used, the will is unambiguous. *Id.* Absent ambiguity, the construction of a will is a matter of law. *Parker v. Parker*, 131 S.W.3d 524, 530 (Tex. App.—Fort Worth 2004, pet. denied).

The cardinal rule for construing a will mandates that the testatrix's intent be ascertained by looking to the provisions of the instrument as a whole, as set forth in the "four corners" of the testamentary document. The construing court should effectuate that intent as far as legally possible. *Perfect Union Lodge v. Interfirst Bank of San Antonio*, 748 S.W.2d 218, 220 (Tex. 1988). S*ee also Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971). Stated differently, the controlling rule of construction of an unambiguous will is that the intention of the testatrix must be ascertained, if possible, at the time she executed the will, and from the four corners of the will, giving meaning to all parts, if possible. *Murphy v. Hunnicutt*, 199 S.W.2d 298, 300 (Tex. Civ. App.—Texarkana 1946, writ ref.).

8

## B. CORA'S WILL

Looking at paragraph II of Cora's Will, it is evident that she bequeathed to her three grandchildren, in fee simple, 1448.50 acres of property/land. Specifically, she bequeathed "all of the acreage property, to-wit, farm lands and pasture lands owned . . .". Stated differently, the Will contains a specific bequest of Cora's acreage property, which was further described as "farm lands and pasture lands." "Lands" necessarily included both the surface and mineral interests owned by Cora McCrabb at the time she executed the Will.

Turning to paragraph III, the residuary clause, it states:

> *Subject to the terms of paragraph 2 hereof,* all of the rest and residue of my estate, including any and all personal property and my home in Cuero, and my old home in Thomasville, and including any stocks, bonds and notes, and my personal jewelry and including any land owned by me in any city or town; in fact, including all property of every kind *save and except pasture and farm acreage property*, I do give to my granddaughter, Jessie McCrabb to be held, own and enjoy by her in fee simple and forever.

(emphasis added). This language indicates that paragraph III was meant to be subservient to paragraph II, which bequeathed all farm *lands* and pasture *lands* to Cora's three grandchildren. This is further emphasized by the language wherein Cora bequeathed "all property of every kind *save and except* farm and pasture acreage to her granddaughter Jessie McCrabb." In plain language, Cora gave or bequeathed all land owned by her at the time of her death to Jessie McCrabb *except* the lands already

9

given to her three grandchildren in paragraph II. It was never Cora's intent to leave the property/lands specifically identified in paragraph II exclusively to her granddaughter Jessie McCrabb. Rather, the language establishes that Cora's intent was to leave her property/farm *lands* and pasture *lands* to her three grandchildren in equal shares and not exclusively to Jessie McCrabb, who was the beneficiary of the residuary clause in paragraph III. Further, it was never Cora's intent to leave these farm lands or pasture lands to her granddaughter Jessie in fee simple. This is established by the "save and except" language contained in paragraph III. The Will is unambiguous. As a matter of law, the minerals that Cora owned at the time of her death passed pursuant to paragraph II of her Will to her three grandchildren in equal shares.

## C. THE ADEMPTION DOCTRINE DOES NOT DICTATE A DIFFERENT RESULT

In response to Boothe-Malone' motion for summary judgment, and in support of their own motion for summary judgment, Green-Henderson asserted that the specific bequest contained in paragraph II of Cora's Will suffered "ademption" when she deeded the 1448.50 acres to J. L. Dubose in 1927. This ignores the simultaneous cross-conveyance executed by J. L. Dubose back to Cora and the two others on the same date. While alienation by the testatrix of the entire subject of the specific legacy

10

would end the legacy, the doctrine of ademption by alienation operates *pro tanto* only. *Burch v. McMillan,* 15 S.W.2d 86, 89 (Tex. Civ. App.—Eastland 1929, no writ).

The ademption doctrine describes the acts by which a specific legacy becomes inoperative because of the "disappearance" of its subject matter from the testator's estate during his lifetime. *Rogers v. Carter*, 385 S.W.2d 563, 565 (Tex. Civ. App.–San Antonio 1965, writ ref'd n.r.e.).The general rule is that a specific legacy is adeemed in its entirety if the entire thing given is disposed of by the testator during his lifetime. *Id*. If the entire thing given is only partially disposed of during the testator's lifetime, however, the resulting ademption operates *pro tanto*, disposing of only that part of the legacy that was alienated; the remainder passes to the legatees. *Id.*; *Burch,* 15 S.W.2d at 89.

In *Rogers,* six parcels of land were specifically bequeathed to the testator's children, but the testator then disposed of his interest in four of six parcels prior to his death. Upon the testator's death, it was argued by the beneficiary of the will's residuary clause that the remaining two parcels of land should pass through the residuary clause because the sale of four of the six parcels adeemed the specific bequest in its entirety. The San Antonio Court disagreed. The court reiterated that while ademption will occur in its entirety when all of the property contained in the specific bequest has been alienated by the testator during his lifetime, ademption does

11

not occur as to any portion of the bequest that remains in the possession or ownership of the testator at the time of his death.

By virtue of the cross-conveyance of August 10, 1927, from Dubose back to Cora, an undivided 1/6 interest in the minerals under the subject property (1/3 of ½) remained in Cora's ownership at the time of her death. The deed from Dubose back to Cora unambiguously reflects this.

The construction of an unambiguous deed is a question of law for the court. *Luckel v. White* 819 S.W.2d 459, 461 (Tex. 1991); *Philipello v. Nelson Family Farming Trust*, 349 S.W.3d 692, 694 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In construing deeds, the primary objective is to ascertain the intent of the parties from the four corners of the deed. *Luckel,* 819 S.W.2d at 461; *Philipello* 349 S.W.3d at 694. To ascertain the parties' true intention, the court examines the deed's language in its entirety. *Id.* That intention, when ascertained, prevails over arbitrary rules of construction. Deeds executed at the same time between the same parties and in reference to the same subject matter should be interpreted together to ascertain the intent of the parties. *Jones v. Fuller,* 856 S.W.2d 597, 601 (Tex. App.-Waco 1993, writ denied), citing *Terrell v. Graham,* 576 S.W.2d 610, 611 (Tex. 1979).

In the case at bar, there were two simultaneously executed deeds in August 1927 that were also simultaneously recorded in DeWitt County. The first deed

12

conveyed 1448.50 acres to J. L. Dubose. That deed did not contain reservation language. However, the simultaneously executed cross-conveyance by J. L. Dubose back to the McCrabbs and Atkinson clearly established the intent of the parties. The critical language of this cross-conveyance was that:

> Whereas, in the trade wherein and hereby I [referring to J. L. Dubose] acquired said land it was agreed by and between myself and said Cora E. McCrabb, John B. McCrabb and Mary E. Atkinson that they should reserve and retain for themselves an undivided ½ of all oil, gas, sulphur, coal and minerals of any and every kind, character, or nature, on or under said 1448 ½ acres of land, and at my request, said retention and reservation of said oil, gas, was not specified and included in the Deed from Ms. Cora E. McCrabb, John B. McCrabb and Mary E. Atkinson to me for the reason that I did not desire my Deed to have this provision, for my convenience and for personal reasons.

> Whereas, it was agreed by and between the said Ms. Cora E. McCrabb, John B. McCrabb and Ms. Mary E. Atkinson and myself that instead of reserving the oil, gas and minerals in said Deed, that I should simultaneously with execution of Deed to me execute to said parties a Bill of Sale, Transfer, Assignment and Conveyance to an undivided ½ of all gas, oil, and minerals of every kind on or under said 1448 ½ acres of land.

CR 147. These recitals are binding on Cora's successors-in-interest. "All parties to a deed are bound by the recitals therein, which operate as an estoppel, working on the interest in the land if it be a deed of conveyance, and binding both parties and privies, privies in blood, privies in estate, and privies in law." *Freeman v. Stephens Prod. Co.,* 171 S.W.3d 651, 654 (Tex. App.-Corpus Christi 2005, pet. denied).

13

As reflected in the two August 10, 1927 deeds, it was the intent of the parties that Dubose receive 100% of the surface of the 1448.50 acres in question, together with an undivided ½ of the minerals in the subject property. It was also the intention of the parties that Cora McCrabb, John McCrabb and Mary Atkinson retain and reserve the remaining undivided ½ mineral interest in the subject property. The issuance of the cross-conveyance as opposed to a reservation in the deed from Cora and the others to Dubose was nothing more than a procedural courtesy to Dubose. For his "convenience" and "personal reasons," he did not want any reservation language to be included in his deed. Instead, the parties agreed to execute and file cross-deeds having the same legal effect as a reservation of mineral interests by Cora and the others. The effect of the transaction was that Cora McCrabb, John McCrabb and Mary Atkinson each retained an undivided 1/6 mineral interest (1/3 of ½) in the subject property. Since Cora owned this 1/6 mineral interest at the time of her death, her 1/6 mineral interest passed to her three grandchildren equally pursuant to paragraph II.

The mineral interest in the subject property retained by Cora through the 1927 cross-conveyance, and still owned by her at the time of her death, never suffered ademption. It remained in her possession/ownership at the time of her death, and therefore was specifically bequeathed to her grandchildren pursuant to paragraph II

of her Will. As a matter of law, the mineral interests in dispute did not pass pursuant to the residuary clause as argued by Greene-Henderson.[1]

In the trial court, Green-Henderson presented the following argument on ademption:

> Assume that in 1924 when Cora . . . wrote her Will, she owned undivided interests in three tracts of "farm lands and pasture lands," to-wit: 1) one-third (1/3) undivided interest in the 1448-1/2 acres located outside of Westoff, Texas; 2) one-third (1/3) undivided interest in 3274 acres adjacent to Thomaston, Texas; and 3) one-third (1/3) undivided interest in 198 acres located outside Cuero, Texas. In 1927, she disposed of her undivided one-third interest in the 1448-1/2 acre tract except for an undivided one-third (1/3) interest in one-half (½) of the mineral estate. When Cora . . . died on January 10, 1929, instead of three tracts of "farm lands and pasture lands," she only owned interest in two tracts, i.e., the 3274 acres and the 198 acres . . ., which passed in equal shares under Paragraph II of her Will to her three grandchildren . . . . In other words, the devise of "farm lands and pasture lands" had been adeemed *pro tanto* as to the 1448 ½ acres – just as caselaw prescribes.

CR 245-46. This argument is flawed because it ignores the cross-conveyance from Dubose back to Cora, and it focuses artificially on the adjectives "farm" or "pasture," not on what was actually bequeathed: the "lands." The argument also ignores the fact that because the devised real property interest was described by its physical location – the farm land and pasture land – the 1/6 mineral interest was identifiable at the time

---

[1] Even if the Court determined that the cross-conveyance from Dubose back to Cora was not a "reservation" *per se*, the result would be the same. The Texas Supreme Court has noted that "there are recognized exceptions to the ademption rule." *Stahl,* 610 S.W.2d at 148. One such exception is reacquisition of the property by the testatrix. *E.g. Peacock v. Owens,* 259 S.E.2d 488 (Ga. 1979).

of Cora's death, *i.e.* it never "disappeared" from Cora's estate. *Rogers*, 385 S.W.2d at 565 (doctrine of ademption only applies when the subject matter of the devise has disappeared from the estate at the time of the testator's death). Therefore, there was no ademption of the 1/6th mineral interest.

In determining a testatrix's intent, the court focuses not on what she intended to write, but the meaning of the words actually used. *San Antonio Area Foundation,* 35 S.W.3d at 639. A conveyance of "land" without reservations includes all minerals and mineral rights. *Schlittler v. Smith*, 101 S.W.2d 543, 630 (1937). The word "land" includes not only the surface of the earth, but everything under it or over it. *Holloway's Unknown Heirs v. Whatley,* 104 S.W.2d 646, 649 (Tex. Civ. App.—Beaumont 1937) *aff'd* 131 S.W.2d 89 (Tex. 1939). The term "land" in its legal sense includes minerals in place, whether severed or not. *Grisham v. Lawrence*, 298 S.W.3d 826, 831 (Tex. App.—Tyler 2009, no pet.). The term "lands" is not as broad as that of "property," but it includes all interest in the land, or that lies above or below it. *Whatley*, 104 S.W.2d at 648. *Whatley* explained the rationale as follows:

> It seems to us that under the authorities, the term "land," in its legal sense, does include oil and minerals in place. Before severance of the mineral estate from the balance of the estate by conveyance, reservation or exception, the term land certainly includes both. So, in the legal sense, the mineral estate in place is just as truly "land" after it is so severed from the surface as the surface is "land" after it is severed from the minerals. In other words, it is our conclusion that oil and other

minerals in place are in a legal sense "land", whether they have been constructively severed from the surface estate or not.

*Id.*

From this it follows that pursuant to the plain meaning of the language within the four corners of paragraph II, Cora specifically bequeathed to her three grandchildren all of her properties/land, which would include the surface and all minerals in, on and under the 1448.50 acres.

Finally, Green-Henderson relied in the trial court on *Spiegel v. KLRU Endowment Fund,* 228 S.W.3d 237 (Tex. App.-Austin 2007, pet. denied), an ademption case, but their reliance is misplaced. In *Spiegel,* Martha Spiegel executed a will in 1999 leaving her husband Robert "our homestead." At the time, the couple's homestead was 300 Plum Creek Lane. In 2002, the couple filed for divorce. Through a mediated property settlement, Martha received the Plum Creek property as her separate property, and Robert moved to a different location, which he then claimed as his homestead. Before the divorce became final, Martha died and Robert claimed the Plum Creek residence under her will. The court disagreed, however, holding that Martha's devise of "our homestead," as opposed to 300 Plum Creek Lane, was adeemed because at the time of her death 300 Plum Creek Lane had lost its characterization as "our homestead." Green-Henderson argue that *Spiegel* is analogous to the case at bar because Cora's devise of the 1448.50 acre tract as "pasture land and

17

farm land" in 1924 lost its characterization as pasture and farm land in 1927 when the surface was conveyed to Dubose. Green-Henderson conclude from this that the devise of the 1448.50 acres was therefore adeemed.

The *Spiegel* court's reasoning highlights the distinction between that case and the case at bar. The *Spiegel* court reasoned that Martha's bequest of "our homestead" was adeemed only because Robert had established his own separate homestead at the time of Martha's death and because he had agreed that Martha would keep the Plum Creek residence as her separate property. 228 S.W.3d at 243. Hence, "no property could be identified by th[e] phrase ['our homestead'] at the time of Martha's death . . . ." *Id.* As the court put it, "[b]ecause Robert discontinued using the Plum Creek residence as his home and because he had an intention not to use it as his home again, . . . the phrase 'our homestead' in Martha's will did not refer to the Plum Creek residence at the time of her death." *Id.* at 244.

In the case at bar, this Court cannot say that. To begin, unlike "our homestead" in *Spiegel*, the property devised by Cora that was present in her estate at her death was readily identifiable: it was 1/6 (split three ways) of the minerals under the "farm land and pasture land," *i.e.* the 1448.50 acres. Furthermore, unlike the former husband in *Spiegel*, Boothe-Malone's predecessor-in-interest never renounced his grandmother's bequest nor did he take action that re-characterized the nature of the 1448.50 acres.

18

He did not agree that the 1448.50 acres was no longer property he had an interest in under his grandmother's Will. Thus, there was no ademption and the phrase "farm land and pasture land" in Cora's Will continued to refer to the 1448.50 acres at the time of her death.

Though long recognized, ademption is a harsh doctrine which, if applied here, would result in rewriting Cora's Will by removing property from her specific devise that was still in her estate at the time of her death. At the time she executed her Will, it was obviously Cora's intent that her three grandchildren, including Boothe-Malone's predecessor-in-interest, inherit the property, both surface and minerals, described in paragraph II as the "farm land and pasture land." While Cora no longer had an ownership interest in the property's surface, or ½ of its minerals, at the time of her death, she most assuredly retained an ownership interest in the other ½ of the minerals. If it was her intent that instead of all three grandchildren inheriting her 1/6 mineral interest through paragraph II, she now wanted just the one grandchild to inherit that interest through paragraph III, she could have easily redrawn her Will between 1927 and 1929 to say so. That she did not redraw her Will speaks loudly and clearly to her intent, which never changed from the time she executed her Will to the time of her death. There was no ademption of her 1/6 mineral interest.

## D. OIL AND GAS LEASES IN THE 1940S SUPPORT BOOTHE-MALONE'S CLAIM

Four oil and gas leases which cover all or a portion of the subject property were executed subsequent to Cora's death. Although these leases are not necessary to Boothe-Malone's claim of title, they are consistent with that claim. Each of the four leases was signed by, among others, John S. McCrabb, who was Cora's son and the executor of her estate; Jessie Houchins, Green-Henderson's predecessor in title; and J.F. McCrabb, Boothe-Malone's predecessor in title. All recognized that J. F. McCrabb owned an interest in the subject property by virtue of Cora's Will. Had Jessie Houchins or John McCrabb believed that J. F. McCrabb did not inherit a portion of this interest from his grandmother Cora, it is not likely that J. F. McCrabb would have executed the leases.[2]

## III. MONEY HAD AND RECEIVED

After the trial court granted summary judgment for Green-Henderson on title, Green-Henderson filed another motion for partial summary judgment seeking to

---

[2] On October 14, 1936, Jessie McCrabb Houchins and Mary Lee Mood executed a power of attorney in favor of John S. McCrabb, thereby granting to John S. McCrabb "full power authority, in our names place and stead, to lease for oil, gas and mineral purposes, on such terms, provisions and conditions as to him may seem proper, any land, and any interest in any land, owned by us… in Victoria County and/or DeWitt County, in the State of Texas, giving and granting our said Agent and Attorney in Fact full power and authority to execute any oil, gas and mineral leases in our names…. ." CR 265-67. This power of attorney confirms that by and through John S. McCrabb, Jessie McCrabb Houchins and Mary Lee Mood did in fact acknowledge J.F. McCrabb's interest in the subject land.

collect royalty payments that were previously paid by certain lessees to Boothe-Malone before payments were suspended and before the trial court's summary judgment on title. CR 279. Green-Henderson based their motion upon the equitable theory of "money had and received." They claimed they were due a "refund or rebate" for all royalty payments paid to Boothe-Malone. The trial court agreed. CR 366. This was error.

## A. Green-Henderson hold no Ownership Interest in the Royalty Payments

One of the elements of money had and received is that the money must belong to the plaintiff in equity and good conscious. *E.g. Doss v. Homecomings Fin. Network, Inc.,* 210 S.W.3d 706, 710-11 (Tex. App.-Corpus Christi 2006, pet. denied). The trial court's award of money had and received is erroneous because, as demonstrated, the court's ruling on title is erroneous. Because Boothe-Malone hold title to the subject property, Greene-Henderson do not have an ownership interest in the money paid to Boothe-Malone. Therefore, no royalty payments made to Boothe-Malone for their 1/18 mineral interest could possibly have been improper. For that reason, the trial court's second summary judgment must be reversed.

## B.  GREEN-HENDERSON LACK STANDING

There is another reason, separate and distinct from the above, why the trial court erred. Specifically, Green-Henderson lack standing to recover directly from Boothe-Malone. If any party has a claim, it is the operator that paid the money.

As with any claim, standing is required for a plaintiff to recover for money had and received. *Hudgeons v. Hallmark,* 2015 WL 5634395 *2 (Tex. App.-Fort Worth 2015, no pet.).  Where an operator mistakenly pays a royalty owner funds it should have paid to another royalty owner, the operator has standing to seek recoupment under money had and received. *Amoco Prod. Co. v. Smith,* 946 S.W.2d 162, 163-64 (Tex. App.-El Paso 1997, no writ). After all, it is the operator that has parted with the money.

In fact, all of the cases cited in Green-Henderson's motion for partial summary judgment on money had and received involved claims brought by the party who mistakenly, or as the result of fraud, paid the money in the first place.

Boothe-Malone duly take note that in their reply to Boothe-Malone's summary judgment response, Green-Henderson cited a case, *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690 (Tex. 1986), which states that an underpaid royalty owner has a claim for unjust enrichment against an overpaid royalty owner. *Id.* at 692. However, this statement is *dicta* because *Gavenda* involved a suit by the underpaid royalty owner

22

against the operator, not against the overpaid royalty owner. The actual holding in *Gavenda* was that the "binding until revoked" rule for payments made in reliance on erroneous division orders does not apply where the operator prepares an erroneous division order and retains the benefits. *Id.* citing <u>Stanolind Oil & Gas Co. v. Terrell, 183 S.W.2d 743 (Tex.Civ.App.—Galveston 1944, writ ref'd)</u>.

Boothe-Malone also take note of *Huggins v. Royalty Clearinghouse, Ltd.,* 2015 WL 4637630 (W.D. Tex. 2015), in which the court held that an underpaid royalty owner had a claim against the overpaid royalty owner for unjust enrichment. *Id.* at *9. In *Huggins*, however, the evidence was undisputed that it would be unconscionable for the overpaid royalty owner to retain the mistakenly disbursed royalty payments because he received the payments "with full knowledge he had previously and validly conveyed his royalty interest in the Units to RCH via the Deed. Those royalty payments were and are RCH's property, and Huggins has profited at RCH's expense by retaining them. RCH is entitled to restitution for that wrong." *Id.* In the case at bar, there is no evidence of a "wrong" on the part of Boothe-Henderson. To the contrary, the parties are in a good faith title dispute. This Court should reverse the summary judgment on money had and received.

## RELIEF REQUESTED

Boothe-Malone pray that the Court reverse the judgment awarding title to the disputed mineral interest to Green-Henderson and render judgment awarding title to the disputed mineral interest to Boothe-Malone. They further pray that Green-Henderson take nothing on the money had and received claim. Alternatively, Boothe-Malone pray that the Court remand the money had and received claim for further proceedings consistent with the Court's opinion. Boothe-Malone pray for all further relief to which they may be entitled.

Respectfully submitted,

DUNN, WEATHERED, COFFEY,
RIVERA & KASPERITIS, P.C.
611 South Upper Broadway
Corpus Christi, Texas 78401
TEL: 361.883.1594
FAX: 361.883.1599
EMAIL: frank@weatheredlaw.com

BY  */s/ Frank Weathered*
      Texas Bar No. 20998600

Kevin F. Mickits
Texas Bar No. 14011500
John C. Heymann
Texas Bar No. 09565300
UPTON MICKITS & HEYMANN, LLP
Lincoln Center
7800 IH-10 West, Suite 740
San Antonio, Texas 78230
TEL: 210.881.3071
FAX: 210.881.3090
EMAIL: kfm@umhlaw.com
EMAIL: Jheymann@umhlaw.com

**ATTORNEYS FOR APPELLANTS**

**CERTIFICATE OF WORD COUNT**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 6775.

/s/ Frank Weathered
Frank Weathered

## CERTIFICATE OF SERVICE

This is to certify that on October 26, 2015, this document was electronically filed pursuant to TEX. R. CIV. P. 21(f)(1) and a true and correct copy was served on counsel of record listed below through the electronic filing manager if the email address is on file with the electronic filing manager, pursuant to TEX. R. CIV. P. 21a(a)(1). If the email address of any attorney listed below is not on file with the electronic filing manager, a true and correct copy of this document was served pursuant to  TEX. R. CIV. P. 21a(a)(2).

/s/ *Frank Weathered*
Frank Weathered

Frank F. Henderson, Jr.
113 W. Santa Rosa Street
P.O. Box 366
Victoria, Texas 77902-0366
FAX: 361.573.7491
EMAIL: ffhjr@yahoo.com

# APPENDIX

Partial Summary Judgment, signed March 3, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . 1

Partial Summary Judgment, signed October 21, 2014. . . . . . . . . . . . . . . . . . . . . . . 2

Final Judgment, signed March 23, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

| | | |
|---|---|---|
| PAT A. BOOTHE, STERLING PRICE BOOTHE AND MICHAEL GEORGE MALONE, | § § § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | 267th JUDICIAL DISTRICT |
| | § | |
| ELIZABETH H. GREEN, FRANK F. HENDERSON, JR., WELDON W. DIETZE, JOHN F. DIETZE, JR., CAROLINE D. BRADFORD, CHRISTIN N. DIETZE AND ALEXIS E. DIETZE, | § § § § § § § | |
| | § | |
| Defendants. | § | DEWITT COUNTY, TEXAS |

## PARTIAL SUMMARY JUDGMENT

On the 19th day of September, 2013, came on to be heard the Traditional Partial Motion for Summary Judgment by Defendants and Counter-Plaintiffs Elizabeth H. Green, et al, and the Motion for Partial Summary Judgment by Plaintiffs and Counter-Defendants Pat A. Boothe, et al in the above styled and numbered cause. The Court, having read and considered the Defendants' motion and summary judgment evidence and the Plaintiffs' motion and summary judgment evidence and all responses, replies, and briefs, and having listened to the arguments of counsel, is of the opinion that Defendants' Traditional Partial Motion for Summary Judgment should be GRANTED and that Plaintiffs' Motion for Partial Summary Judgment should be DENIED.

IT IS THEREFORE ORDERED that Defendants and Counter-Plaintiffs Traditional Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Partial Summary Judgment is hereby DENIED.

1

**APPENDIX 1**

The Court further ORDERS that the Defendants and Counter-Plaintiffs recover from the Plaintiffs and Counter-Defendants title and possession to the undivided one eighteenth (1/18) mineral interest, lying beneath the 1448 1/2 acres in dispute.

The Court further FINDS that Defendants and Counter-Plaintiffs are the owners of an additional 8/18 of the mineral estate lying beneath 1448 1/2 acres which is not in dispute.

The Court further ORDERS that after combining the 1/18 mineral interest in dispute with the additional 8/18 mineral interest not in dispute that Defendants and Counter Plaintiffs own the following undivided interests:

| | |
|---|---|
| Frank F. Henderson, Jr. | .125 undivided interest |
| Elizabeth Henderson Green | .125 undivided interest |
| Alexis Estelle Dietze | .06943 undivided interest |
| Christin Nicole Dietze, Individually | .059027 undivided interest |
| Mary Lee Mood Smith Trust FBO Christin Nicole Dietze | .010416 undivided interest |
| John Frederick Dietze, Jr. | .037037 undivided interest |
| Weldon Waggoner Dietze | .037037 undivided interest |
| Caroline Dietze Bradford | .037037 undivided interest |

of all mineral interests in, on and under approximately 1448 1/2 acres of land in DeWitt County, Texas, being the same tract of land described in a deed from Cora E. McCrabb, et al to J.L. Dubose which is dated August 10, 1927, and recorded in Volume 96, Page 325, et seq., of the Deed Records of DeWitt County, Texas.

This is a partial summary judgment.

SIGNED AND RENDERED this 3rd day of MARCH, 2013.

FILED
at 9:30 __ __ A. M
MAR 04 2014
TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By _____ Deputy

Honorable Jack W. Marr

276

APPROVED AS TO FORM:

_____

Kevin F. Mickits
State Bar No. 14011500
John C. Heyman
State Bar No. 09565300
UPTON, MICKITS & HEYMANN, LLP
Lincoln Center
7800 IH-10 West, Suite 740
San Antonio, Texas 78230
Tel: (210) 881-3071
Fax: (210) 991-3090
Attorneys for Plaintiffs Pat A. Boothe
Sterling Price Boothe, and Michael
George Malone


_____

Kevin D. Cullen
State Bar No. 05208625
Patrick A. Cullen
State Bar No. 05208800
CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
P. O. Box 2938, Victoria, TX  77902
Tel:  (361) 573-6318
Fax: (361) 573-2603
Attorneys for Defendants, Elizabeth H. Green,
Frank F. Henderson, Jr., Weldon W.
Dietze, John F. Dietze, Jr., Caroline D.
Bradford, Christin N. Dietze, and Alexis
E. Dietze

3

277

APPROVED AS TO FORM:

Kevin F. Mickits
State Bar No. 14011500
John C. Heyman
State Bar No. 09565300
UPTON, MICKITS & HEYMANN, LLP
Lincoln Center
7800 IH-10 West, Suite 740
San Antonio, Texas 78230
Tel: (210) 881-3071
Fax: (210) 991-3090
Attorneys for Plaintiffs Pat A. Boothe
Sterling Price Boothe, and Michael
George Malone

Kevin D. Cullen
State Bar No. 05208625
Patrick A. Cullen
State Bar No. 05208800
CULLEN, CARSNER, SEERDEN & CULLEN, L.L.P.
P. O. Box 2938, Victoria, TX 77902
Tel: (361) 573-6318
Fax: (361) 573-2603
Attorneys for Defendants, Elizabeth H. Green,
Frank F. Henderson, Jr., Weldon W.
Dietze, John F. Dietze, Jr., Caroline D.
Bradford, Christin N. Dietze, and Alexis
E. Dietze

3

278

CAUSE NO. 13-05-22659

| | | |
|---|---|---|
| PAT A. BOOTHE, STERLING PRICE BOOTHE AND MICHAEL GEORGE MALONE, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | |
| vs. | § § | 267th JUDICIAL DISTRICT |
| ELIZABETH H. GREEN, FRANK F. HENDERSON, JR., WELDON W. DIETZE, JOHN F. DIETZE, JR., CAROLINE D. BRADFORD, CHRISTIN N. DIETZE AND ALEXIS E. DIETZE, | § § § § § § § | |
| Defendants. | § | DEWITT COUNTY, TEXAS |

## PARTIAL SUMMARY JUDGMENT

On the 13th day of May, 2014, came on to be heard "Traditional Partial Motion for Summary Judgment" filed March 4, 2014 by Defendants and Counter-Plaintiffs Elizabeth H. Green, et al in the above styled and numbered cause. The Court, having considered the summary judgment evidence, and authorities submitted, withdraws its letter ruling filed July 1, 2014 and renders this Order. This Court is of the opinion that the Traditional Partial Motion for Summary Judgment should be GRANTED, in part.

IT IS THEREFORE ORDERED that Defendants and Counter-Plaintiffs' Traditional Partial Summary Judgment filed March 4, 2014 is GRANTED, in part, and Counter-Plaintiffs are awarded judgment against Michael George Malone in the amount of $54,943.29; against Pat A. Boothe in the amount of $27,471.65; and against Sterling Price Boothe in the amount of $27,471.65. The request of Defendants/Counter-Plaintiffs for pre-judgment interest, post-judgment interest and all costs of court will be addressed by the Court upon entry of a final

**APPENDIX 2**

judgment in this cause which disposes of all claims asserted by Plaintiffs, and Defendants/ Counter-Plaintiffs.

Signed this 21st day of October, 2014.

_____
Jack W. Marr

FILED

_____ day of _____
at _____ o'clock _____ M

OCT 23 2014

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas

By_____ Deputy

367

| | | |
|---|---|---|
| PAT A. BOOTHE, STERLING PRICE BOOTHE AND MICHAEL GEORGE MALONE, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | |
| vs. | § § | 267TH JUDICIAL DISTRICT |
| ELIZABETH H. GREEN, FRANK F. HENDERSON, JR., WELDON W. DIETZE, JOHN F. DIETZE, JR., CAROLINE D. BRADFORD, CHRISTIN N. DIETZE AND ALEXIS E. DIETZE, | § § § § § § | |
| Defendants | § § | DEWITT COUNTY, TEXAS |

## FINAL JUDGMENT

On the 19th day of September, 2013, came on to be heard the Traditional Partial Motion for Summary Judgment of Defendants and Counter-Plaintiffs Elizabeth H. Green, et. al., and the Motion for Partial Summary Judgment of Plaintiffs and Counter-Defendants Pat A. Boothe, et. al. in the above styled and numbered cause. The Court, having read and considered the Defendants' motion and summary judgment evidence and the Plaintiffs' motion and summary judgment evidence and all responses, replies, and briefs, and having listened to the arguments of counsel, was of the opinion that Defendants' Traditional Partial Motion for Summary Judgment should be GRANTED and that Plaintiffs' Motion for Partial Summary Judgment should be DENIED. The Court therefore rendered a partial summary judgment in Defendants' favor on March 3, 2013.

On the 3rd day of May, 2014, then came on to be heard the subsequent Traditional Partial Motion for Summary Judgment of Defendants/Counter-Plaintiffs Elizabeth H. Green et. al. the Court, having read and considered the Defendants' motion and summary judgment evidence and all responses, replies, and briefs, and having listened to the arguments of counsel, was of the

---

FINAL JUDGMENT PAGE 1

**APPENDIX 3**

opinion that Defendants'/Counter-Plaintiffs' subsequent Traditional Partial Motion for Summary Judgment should be GRANTED IN PART. The Court therefore rendered a subsequent partial summary judgment in Defendant's/Counter-Plaintiffs' favor on October 21, 2014.

IT IS THEREFORE ORDERED that Defendants and Counter-Plaintiffs' Traditional Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Partial Summary Judgment is hereby DENIED.

The Court therefore ORDERS that Plaintiffs' Motion for Partial Summary Judgment be and the same is hereby DENIED.

The Court further ORDERS that the Defendants and Counter-Plaintiffs recover from the Plaintiffs and Counter-Defendants title and possession to the undivided one eighteenth (1/18) mineral interest, lying beneath the 1448 ½ acres in dispute.

The Court further FINDS that Defendants and Counter-Plaintiffs are the owners of an additional 8/18 of the mineral estate lying beneath 1448 ½ acres which is not in dispute.

The Court further ORDERS that after combining the 1/18 mineral interest in dispute with the additional 8/18 mineral interest not in dispute that Defendants and Counter-Plaintiffs own the following undivided interests:

| | |
|---|---|
| Frank F. Henderson, Jr. | .125 undivided interest |
| Elizabeth Henderson Green | .125 undivided interest |
| Alexis Estelle Dietze | .06943 undivided interest |
| Christin Nicole Dietze, Individually | .059027 undivided interest |
| Mary Lee Mood Smith Trust FBO Christin Nicole Dietze | .010416 undivided interest |
| John Frederick Dietze, Jr. | .037037 undivided interest |

Weldon Waggoner Dietze                              .037037 undivided interest

Caroline Dietze Bradford                            .037037 undivided interest

of all mineral interests in, on and under approximately 1448 ½ acres of land in DeWitt County,
Texas, being the same tract of land described in a deed from ~~[struck through]~~ J. L.
Dubose, which is dated August 10, 1927, and recorded in Volume ~~95~~, Page ~~325~~, et. seq., of the
Deed Records of DeWitt County, Texas.

On the 13th day of May, 2014, came on to be heard "Traditional Partial Motion for
Summary Judgment" filed March 4, 2014 by Defendants and Counter-Plaintiffs Elizabeth H.
Green, et. al. in the above styled and numbered cause. This Court is of the opinion that
Defendants' Traditional Partial Motion for Summary Judgment should be GRANTED.

IT IS THEREFORE FURTHER ORDERED that Defendants and Counter-Plaintiffs'
Traditional Partial Summary Judgment filed March 4, 2014 is GRANTED, in part, and
Defendants, in their capacity as Counter-Plaintiffs, are awarded judgment for damages against
Michael George Malone in the amount of $54,943.29; against Pat A. Boothe in the amount of
$27,471.65; and against Sterling Price Boothe in the amount of $27,471.65. In addition to the
damages awarded above, Counter-Plaintiffs are entitled to pre-judgment interest from Michael
George Malone in the amount of $4,786.26; prejudgment interest in the amount of $2,388.78 from
Pat A. Boothe; and prejudgment interest in the amount of $2,388.98 from Sterling Price Boothe.

The Court further awards post-judgment interest on the aforementioned damages and pre-
judgment interest interest at the rate of 5% per-annum from the date of this judgment until paid.

The Court awards Defendants/Counter-Plaintiffs their taxable costs of court.

Based upon the pleadings now on file, this Judgment is and should be considered final as it disposes of all claims asserted by Plaintiffs and Defendants/Counter-Plaintiffs.

Signed this 23rd day of MARCH, 2015.

_____
Honorable Judge Jack W. Marr

AGREED TO AS TO FORM

_____
FRANK F. HENDERSON, JR.    00798250
ATTORNEY FOR DEFENDANTS/ COUNTER PLAINTIFF

_____
EMILY STROUP    24045243
Attorney for Plaintiffs/ Counter Defendants

FILED
day of
at 10:49 o'clock A M

MAR 23 2015

TABETH GARDNER, Clerk
Dist. Court, Dewitt County, Texas
By_____ Deputy